**Bruce B. LANDRIGAN, Plaintiff, Appellant,**

v.

**CITY OF WARWICK et al., Defendants, Appellees.**

**No. 80–1053.**

United States Court of Appeals, First Circuit.

Argued June 4, 1980.

Decided Aug. 27, 1980.

William Y. Chaika, Cranston, R.I., for plaintiff, appellant.

Edward J. Regan, Providence, R.I., with whom Tillinghast, Collins & Graham, Providence, R.I., was on brief, for Town of East Greenwich.

William J. Toohey, Warwick, R.I., for City of Warwick.

Joseph W. Monahan, III, Boston, Mass., with whom Frank E. Reardon, Boston, Mass., was on brief, for Thomas R. Joyce.

Amato A. DeLuca, Warwick, R.I., with whom Sandra A. Blanding and Revens & DeLuca Ltd., Warwick, R.I., were on brief, for William J. McElroy.

William Poore, Pawtucket, R.I., for Melvin C. Angilly.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

█ Plaintiff's civil rights complaint[1] against the City of Warwick, the Town of East Greenwich, police officer McElroy of the Warwick Department, and officers Angilly and Joyce of the East Greenwich Department alleged, *inter alia*, a conspiracy among the defendants to cover up and legitimize Officer McElroy's alleged use of excessive force against plaintiff. A pendent state tort count was included. All of the defendants moved to dismiss on various grounds. The court reserved decision on these motions until after plaintiff had presented his case and then, concluding plaintiff had failed to state a prima facie case, granted the defendants' motions for directed verdicts and motions to dismiss. Plaintiff now appeals.

Before addressing plaintiff's and defendants' many contentions, we summarize both the allegations in the complaint and the evidence presented in support thereof, stating the latter in the light most favorable to plaintiff.

## I.

The complaint alleged that on the morning of February 4, 1974 while plaintiff was stalled on Route 1 in East Greenwich, Rhode Island, defendant Officer McElroy, with specific intent to injure plaintiff and in an excessive use of force, threw plaintiff to the ground, breaking his leg. When other officers, congregated nearby, realized the serious nature of the injury sustained, they allegedly agreed to "cover-up" and "legitimize" McElroy's conduct. The conspiracy was said to have included the following acts:

1) defendants' filing of deliberately false reports concerning the events of February 4, 1974;

2) defendants' causing to have issued against plaintiff a baseless summons for "driving too fast for conditions";

3) defendants' causing to have issued a complaint and warrant against plaintiff's brother for assault;

4) defendants' commission of perjury during two civil tort actions plaintiff brought against McElroy in state court.

The complaint also contained claims against the City of Warwick and Town of East Greenwich, predicated on their failure to investigate the officers' misconduct. Plaintiff alleged that the municipalities "intentionally continue to ignore the said conduct" and, as a result "have ratified and made their own, all of the actions of the defendants."

A separate state law count asserted, without elaboration, that "under the laws of the State of Rhode Island the defendants are liable in tort to the plaintiff," and demanded damages.

From the evidence plaintiff presented, the following could have been found. In the early morning hours of February 4, 1974, plaintiff, his two brothers, and nephew were driving along Route 1 in East Greenwich, Rhode Island. While snow was piled along the sides, the road itself was clear. Plaintiff had been having difficulty with his new car, and as he drove over the crest of a hill, the car backfired and stalled.

---

1. Plaintiff's complaint invokes 42 U.S.C. §§ 1981, 1983, 1985 and 1986. His federal cause of action is properly predicated only under section 1983. As plaintiff has not alleged any racial or other "class–based, invidiously discriminatory animus," section 1985 is not applicable. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). As section 1985 does not apply, any claim under section 1986 must also fail. *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). Similarly, the absence of racial discrimination is fatal to any section 1981 claim. *Id.*, 3.

The car rolled down the hill, continuing to backfire as it passed Officers Angilly and Joyce, who were on the side of the road, and came to a halt further down Route 1. Within seconds three police officers—defendants McElroy, Angilly, and Joyce—converged on plaintiff. Plaintiff exited his car to hand his license to Angilly, who had requested it, and tried to explain to McElroy, who had accused him of speeding, the problem with his car. In compliance with the officers' directions, plaintiff returned to his car. Officer Angilly then took plaintiff's license to his cruiser, which was parked behind plaintiff's car, and Sgt. Joyce returned to his vehicle, parked in front of plaintiff's. Plaintiff realized he had not given Angilly his registration and, after retrieving it from his glove compartment, walked back to do so. As plaintiff was returning to his car, McElroy came from behind yelling at plaintiff to get in his car before he threw him in, shoved plaintiff up against the car, and then threw him to the ground, breaking plaintiff's leg. Plaintiff's brother attempted to come to his aid but was restrained by the police and placed in one of the cruisers. Plaintiff threatened to sue them all and asked for McElroy's badge number. McElroy refused to give it, and Sgt. Joyce then said "I'm going one step ahead of you, kid . . . I'm going to place you under arrest." He then read plaintiff his *Miranda* rights but refused at that time to state what the charges were. As plaintiff sat in the road yelling, the officers stood around laughing, apparently disbelieving plaintiff's protestations that his leg was broken, before eventually calling an ambulance. When the ambulance arrived, Sgt. Joyce asked the attendant if plaintiff's leg were indeed broken and then, turning to the other officers, said they had better get their stories straight. Later that morning, the three officers went to the East Greenwich police department where reports of the incident were completed and filed. The reports, introduced into evidence, described the events differently than did plaintiff. Sgt. Joyce approved and signed the report written by Officer Angilly and authorized the issuance of a driving too fast for conditions charge against plaintiff. This criminal charge is still pending in a state court.

Prior to filing the instant complaint, plaintiff brought an action in a Rhode Island state court against Officer McElroy for assault and battery. The first trial apparently ended in a mistrial, but the second concluded with a $42,000 verdict for plaintiff. We were informed at oral argument that this judgment has not been satisfied and is, according to McElroy's counsel, probably uncollectible.

## II.

Defendants argue the instant action is barred by res judicata and even if not so barred, plaintiff failed to establish, allege, and/or prove any facts that would entitle him to relief. Therefore, defendants maintain, the action was properly dismissed.

■ Res judicata precludes parties to a lawsuit, and their privies, from relitigating between them issues that were or might have been raised in the former suit. *Griffin v. Burns*, 570 F.2d 1065, 1070–71 (1st Cir. 1978). Of the present defendants, only McElroy was a party to the state tort action, and thus he is the only one who could conceivably prevail on the ground of res judicata.

■ Insofar as plaintiff seeks further recovery from McElroy relating to the latter's alleged use of excessive force, plaintiff's action is barred. While plaintiff may have foregone recovery of attorney fees by predicating his action in the state court on assault and battery rather than on section 1983, *see* 42 U.S.C. § 1988 authorizing courts to award attorney's fees to a prevailing party in a section 1983 action, plaintiff may not now assert a theory of recovery which he could have raised in the state action. *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).[2]

---

2. There is no contention that plaintiff, in the state court assault and battery action, sought specifically to reserve a federal section 1983 action for determination in a federal court. *See*

■ Plaintiff's conspiracy claim against McElroy is not barred by res judicata, however, because it is a separate cause of action. While res judicata is applicable in a section 1983 context, *Griffin v. Burns*, 570 F.2d at 1070; *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974), one condition to its application is that the cause of action in the two proceedings be the same. *Griffin v. Burns*, 570 F.2d at 1071. The excessive use of force and the subsequent cover up are separate and distinct wrongs resting on different factual bases. Even if plaintiff would have been able to try both actions against McElroy at once without having to join the other defendants, *cf. Hackett v. Hyson*, 72 R.I. 132, 48 A.2d 353 (1946); Prosser, *The Law of Torts* §§ 46, 47 (4th ed. 1971) (plaintiff may recover a judgment against one joint tortfeasor and then bring a subsequent action against the other), he was not required to do so. *See generally*, 1B Moore's Federal Practice ¶ 410[1] (2d ed. 1948).[3]

### III.

We turn then to the merits of plaintiff's complaint.

### A.

"[T]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

Plaintiff has not indicated very clearly what rights he was deprived of; rather, he has focused on numerous acts of the defendants and has assumed without much explanation that these acts implicate rights secured by the Constitution and laws. From plaintiff's complaint and evidence, the following allegedly violative acts appear:

1) McElroy's use of excessive force against plaintiff;

2) The defendants' conspiracy to cover up and legitimize McElroy's use of excessive force;

3) The false arrest of plaintiff without probable cause;

4) The filing of deliberately false police reports;

5) The issuance of a baseless summons against plaintiff for driving too fast for conditions;

6) Defendants' commission of perjury during the state tort trials;

7) The false arrest and charging of plaintiff's brother.

While the last five acts are, under the evidence, component parts of the conspiracy, we treat them separately as explained *infra*. The question is whether any of this conduct violated plaintiff's "rights, privileges, or immunities secured by the Constitution and laws" within the meaning of 42 U.S.C. § 1983.

1) *McElroy's alleged use of excessive force*

■ We take it as established that, in appropriate circumstances, the use of excessive force or violence by law enforcement personnel violates the victim's constitution-

---

*Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103, 1108 n.8 (1st Cir. 1978); *Board of Regents v. Tomanio*, —— U.S. ——, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (Brennan, J., dissenting). We express no opinion whether plaintiff would have been assisted had he made such a reservation.

**3.** It is true that the Restatement of Judgments recognizes a possible limited exception to the general rule that res judicata does not bar a subsequent action on a separate cause of action. *See* Restatement (Judgments) § 62, comment *f* (1942). Comment *f* provides that where "a number of successive acts . . . are substantially simultaneous . . . public convenience and fairness to the defendant may require that they be dealt with in one proceeding. Thus, where in a series of rapidly successive acts a person breaks into the house of another, beats him and takes his chattels, a judgment based upon a claim for any one of these harms is a bar to a subsequent action." Here, while the alleged cover up commenced, according to plaintiff's complaint, shortly after the alleged use of excessive force, it continued years thereafter, and we do not think this is an appropriate case for the application of comment *f*.

al rights. *United States v. Villarin Gerena*, 553 F.2d 723, 724 (1st Cir. 1977); *Clark v. Ziedonis*, 513 F.2d 79, 80 n.1 (7th Cir. 1975); *Jenkins v. Averett*, 424 F.2d 1228, 1231–32 (4th Cir. 1970) (discussing constitutional right to be free from unreasonable interference by police). However, the plaintiff may not prevail on this ground.

■ As stated in Part II, plaintiff's action against McElroy, insofar as based on the latter's excessive use of force, is barred by res judicata. Plaintiff also seeks damages for his broken leg from Officers Angilly and Joyce and from the municipalities. We defer discussion of municipal liability until Part III, B, 1, *infra*. With respect to the two officers, we conclude that they cannot be held liable for the assault and battery. Under plaintiff's evidence, McElroy, not Joyce or Angilly, pushed plaintiff to the ground, and the conspiracy in which all were allegedly involved did not commence until after plaintiff's leg was broken. Plaintiff's theory seems to be that Angilly and Joyce, by conspiring to cover up McElroy's excessive use of force, became liable for McElroy's original tort. Plaintiff is incorrect. *See Hampton v. Hanrahan*, 600 F.2d 600, 622 (7th Cir. 1979), *rev'd in part on other grounds*, —— U.S. ——, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (those who participate in a conspiracy to cover up an illegal raid but not the raid itself, or the planning of it, are liable only for damages arising out of the post–raid conspiracy).

### 2) The conspiratorial cover–up

■ While conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978), *modified on other grounds*, 583 F.2d 779 (1978), *overruled on other grounds, Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 978 (5th Cir. 1979). In order to state an adequate claim for relief under section 1983, "plaintiff must allege and prove both a conspiracy and an actual deprivation of

rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim." *Hampton v. Hanrahan*, 600 F.2d at 622. "The gist of the [section 1983] cause of action is the deprivation and not the conspiracy." *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 n.2 (7th Cir. 1975). Conspiracy is merely the mechanism by which to obtain the necessary state action, *see, e. g., Adickes v. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970), or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy, *see Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir. 1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964).

■ Here plaintiff has identified no such actual deprivation or damage. His theory seems to be that defendants conspired to deprive him of his section 1983 right of action to seek redress for the unconstitutional use of force, and we may assume, without deciding, that such an object, sufficiently advanced, could have amounted to an actionable deprivation of federally protected rights. *See, e. g., Hampton v. Hanrahan*, 600 F.2d 600, 621–23 (7th Cir. 1979), *rev'd in part on other grounds*, —— U.S. ——, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) *Hampton v. City of Chicago*, 484 F.2d 602, 609–10 (7th Cir. 1973) (Stevens, J.), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974). In view, however, of plaintiff's successful state tort action (which, as we have said, bars a section 1983 action for the same injuries), defendants obviously did not succeed in legitimizing McElroy's use of force against plaintiff. The fact plaintiff had to pursue normal legal channels to obtain redress–a jury trial in a state court and an appeal–does not state a cognizable injury or damage.

While defendants did not deprive plaintiff of his section 1983 right of action to seek redress for McElroy's alleged use of excessive force, some of the acts in furtherance of the alleged conspiracy may constitute independent constitutional violations which are actionable under section 1983.

We address these in the succeeding subsections.

### 3) *False arrest for driving too fast for conditions*

 According to plaintiff's version of events, he was arrested in bad faith and without probable cause. Plaintiff stated a prima facie case of false arrest cognizable under section 1983. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Duriso v. K–Mart*, 559 F.2d 1274, 1277 (5th Cir. 1977); *Sartin v. Commissioner of Public Safety*, 535 F.2d 430, 434 (8th Cir. 1976); *Pritchard v. Perry*, 508 F.2d 423 (4th Cir. 1975); *Draeger v. Grand Central, Inc.*, 504 F.2d 142, 145 n.2 (10th Cir. 1974); *Joseph v. Bowlen*, 402 F.2d 367 (7th Cir. 1968); *Richardson v. City of Newark*, 449 F.Supp. 20 (D.Del.1978). However, this action may not now proceed in federal court because of the pending criminal driving too fast for conditions charge which could settle the question whether defendants had probable cause to arrest plaintiff on that charge.

Had plaintiff sought to enjoin the pending criminal action–or requested a declaratory judgment that the action was meritless because he had not in fact been driving too fast for conditions–a federal court would likely have been required to abstain until the state proceedings ran their course. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). The effect of plaintiff's section 1983 action, were he to prevail on his claim that the defendants lacked probable cause to arrest him for driving too fast for conditions, would be, in practical terms, much the same as the rendering of a declaratory judgment that the pending charge is baseless. The validity of the state charge would be substantially undermined even though the state, not being a party to the section 1983 action, may not be barred from prosecuting. *See generally Guerro v. Mulhearn*, 489 F.2d 1249, 1253 (1st Cir. 1974). While the Supreme Court has left open the question whether abstention is required when only damages relief is sought in a section 1983 action, *Juidice v. Vail*, 430 U.S. 327, 339 n.16, 97 S.Ct. 1211, 1219, n.16, 51 L.Ed.2d 376 (1977), the federalism concerns behind *Younger* abstention would seem applicable here; we therefore hold that plaintiff's section 1983 action, insofar as it concerns the alleged illegal arrest, should be stayed pending final determination in the state court system of the charge resulting from that arrest. *See McCurry v. Allen*, 606 F.2d 795 (8th Cir. 1979), *pet. for cert. granted*, 444 U.S. 1070, 100 S.Ct. 1012, 62 L.Ed.2d 750 (section 1983 action premised on search and seizure matters litigated during criminal trial stayed pending state appellate review of criminal conviction); *Guerro v. Mulhearn*, 498 F.2d 1249, 1254 (1st Cir. 1974) (touchstone for determination whether to defer a civil rights damages action which is parallel to state criminal proceedings is whether federal court will be making rulings calling into question the validity of the state conviction).

There are, of course, circumstances where a federal court should not stay its hand so as to allow a state prosecution to proceed. The Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), indicated that on a showing of bad faith, harassment, or unusual circumstances calling for equitable relief, interference with state proceedings may be warranted. *Id.*, 54, 91 S.Ct. 755. Here, plaintiff has alleged bad faith on the part of the defendant officers in arresting him and causing criminal proceedings to be instituted, but he has made no showing of bad faith by those responsible for prosecuting the driving too fast for conditions charge.[4] The absence of

---

4. From the testimony of John Migliaccio, an assistant state attorney general, it appears that the state Attorney General's office has jurisdiction over criminal prosecutions in the state superior court while a local prosecutor handles those before a state district court. Proceedings on the charge against plaintiff have occurred at both levels. Plaintiff presented no evidence that either prosecution was in bad faith. Presumedly, plaintiff would argue the decision to

the latter seems to us critical. It is not unusual for a citizen who is arrested and the arresting officer to have divergent views of the material factors. The arrestee may often attribute to the officer a bad or unconstitutional motive and, in effect, accuse him of bad faith. Such charges, even if later shown to be founded, do not necessarily indicate that the prosecution is itself being conducted in bad faith. If, as contemplated by *Younger* and its progeny, interference with state criminal proceedings is to be the exception rather than the rule, we think bad faith on the part of the arresting officer alone ordinarily will not suffice to license federal interference; there must be evidence of bad faith involvement by the prosecutor as well. Here, whether plaintiff was or was not driving too fast for conditions will basically turn on credibility. Plaintiff's section 1983 false arrest action will in large measure center on the very issues which would be decided in the state criminal trial—the road conditions and plaintiff's speed. In these circumstances, the state proceedings should be completed first.

In the event plaintiff is convicted in the state court, the collateral estoppel effect of that conviction on plaintiff's section 1983 action will need to be assessed. *See Mastracchio v. Ricci,* 498 F.2d 1257 (1st Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975).

4) *False police reports*

[12] Plaintiff's complaint alleged "Immediately after the incident . . . McElroy . . . [went] to the East Greenwich Police Station where he collaborated with defendants Angilly and Joyce. The result of such collaboration was the filing of deliberately false police reports concerning the incident with the

records of the police departments of the City of Warwick and the Town of East Greenwich."

The district court, citing *Shock v. Tester,* 405 F.2d 852 (8th Cir.), *cert. denied,* 394 U.S. 1020, 89 S.Ct. 1641, 23 L.Ed.2d 45 (1969), *reh. denied,* 395 U.S. 941, 89 S.Ct. 2004, 23 L.Ed.2d 460 (1969), stated that there was a total lack of evidence that plaintiff had suffered any damages as a result of the false reports and therefore concluded no section 1983 claim had been established. The plaintiff's section 1983 action alleging a denial of due process from law enforcement officials' filing of a deliberately false accident report in *Shock v. Tester* was dismissed because of his failure to allege how any deprivation of life, liberty, or property flowed from the officials' actions. The court noted that under state law the accident report could not be used as evidence in a criminal or civil proceeding. *Id.,* 855.

Plaintiff seeks to distinguish *Shock v. Tester* by pointing out that the instant reports probably would be admissible in a state proceeding under the hearsay exception for business records, and by noting that the instant reports form the basis of the false criminal charge against plaintiff, a factor not present in *Shock v. Tester.* It seems to us that the focus of plaintiff's complaint is the allegedly false charge pending against him—the police reports are mainly relevant to the extent they resulted in that charge. For purposes of recovering damages at least, we do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws. If action is subsequently taken on the basis of that report, or

prosecute must have been made on the basis of the allegedly false police reports (discussed *infra,* Part III, A, 4) and is somehow tainted thereby. As no evidence was presented showing a history of illegal arrests or improper activities by any of the three defendant officers or other reason to have questioned seriously their credibility, reliance on their reports would not constitute bad faith prosecution; *cf. Munson v. Gilliam,* 543 F.2d 48, 53 (8th Cir. 1976) (noting

the very limited circumstances under which a prosecutor's failure to investigate both sides of a matter could be characterized as bad faith). Nor would the failure to dismiss the charge after plaintiff's successful state tort action reflect on the motives of the prosecutor. The state tort action established that McElroy assaulted and/or battered plaintiff; it did not determine whether or not plaintiff had been driving too fast for conditions.

if the report is disseminated in some manner, plaintiff's constitutional rights may well then be violated, *but see Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and in that event a section 1983 action may lie. The focus, however, ordinarily should be on the consequences, if any, not on the mere existence of the report. We therefore agree with the district court that the mere filing of the false police reports, by themselves and without more, did not create a right of action in damages [5] under 42 U.S.C. § 1983.

### 5) *The baseless summons*

Plaintiff's complaint alleged

"The defendants caused to have issued against the plaintiff a summons for 'driving too fast for conditions,' so called. This charge is still pending in the Rhode Island Superior Court for Kent County. The charge is baseless and constitutes a blatant abuse of legal process. It was issued only as an attempt to give some justification for the unlawful actions of the defendants."

A number of courts have stated that the federal constitution does not secure a person against unfounded or malicious claims or suits in a state court. *See Curry v. Ragan*, 257 F.2d 449, 450 (5th Cir.), *cert. denied*, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958); *see also Paskaly v. Seale*, 506 F.2d 1209, 1212–13 (9th Cir. 1974) (malicious prosecution without more does not constitute a civil rights violation); *United States ex rel. Rauch v. Deutsch*, 456 F.2d 1301 (3d Cir. 1972) (allegation of arrest and prosecution for purpose of extortion does not state section 1983 claim); *Rosales v. Lewis*, 454 F.Supp. 956, 960 (S.D. Iowa 1978) (claim of

malicious prosecution *standing alone* does not implicate any federally protected rights); *Pyles v. Keane*, 418 F.Supp. 269, 276 (S.D.N.Y.1976) (police's execution of an allegedly baseless charge for the purpose of forcing plaintiff to implicate not himself, in violation of his fifth amendment privilege, but his brother does not deprive plaintiff of any right, privilege, or immunity secured by the Constitution).

On the other hand, a contrary view has been expressed. *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977) ("An abuse of process [i. e., the initiation of prosecution for an improper purpose] is by definition a denial of procedural due process"); *Voytko v. Ramada Inn*, 445 F.Supp. 315, 323–24 (D.N.J.1978) (following *Jennings*); *Spears v. Conlisk*, 440 F.Supp. 490, 498 (N.D.Ill. 1977) (officer violated plaintiff's fourteenth amendment rights by falsely accusing him of various crimes on which plaintiff was subsequently tried and acquitted); C. Antieau, *Federal Civil Rights Acts* § 56 (1971) ("A person has the right to be free from malicious prosecution by others acting under 'color of law,' and defendants violating this right are liable in actions under 42 U.S.C. § 1983.").

Somewhat distinct are circumstances where the acts constituting malicious prosecution or abuse of process [6] under state law also involved independent constitutional deprivations. *See Hampton v. Hanrahan*, 600 F.2d at 630 ("an action for malicious prosecution may be brought under section 1983 if, acting under color of state law, the defendant has subjected the plaintiff to a deprivation of constitutional magnitude"); *Nesmith v. Alford, supra*, 318 F.2d 110, 126

---

**5.** As plaintiff has not specifically asked that the report be expunged, we have no occasion to decide whether he might ever be entitled to such relief in the context of a section 1983 suit.

**6.** In order to state a tort cause of action for malicious prosecution, a plaintiff must generally allege criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor. 1 F. Harper & F. James, The Law of Torts 300 (1956). As the driving too fast for conditions charge is still pending, plaintiff does

not characterize defendants' actions as malicious prosecution but rather describes them as an abuse of process. An abuse of process "is committed when the actor employs legal process in a manner technically correct, but for a wrongful and malicious propose to attain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect." *Id.*, 330. It is not necessary that the action have terminated favorably to plaintiff, *Id.*, 330.

(5th Cir. 1963) (discussing possibility that commencement and prosecution of unfounded criminal charge may, under certain circumstances, constitute not only malicious prosecution but a violation of civil rights). Here, plaintiff allegedly was subjected to an independent constitutional violation—he was arrested without probable cause—as part and parcel of defendants' abuse of process, and this constitutional violation is redressable under section 1983 subject to the qualification noted in Part III, A, 3. Whether the filing of the allegedly baseless charge is also actionable under section 1983 we prefer not to decide now. We have not had the benefit of adequate briefing and argument on the issue, and the matter can be dealt with by the district court should the section 1983 claim based on the arrest be pursued following disposition of the pending state criminal charge.

### 6) *Perjury*

■ Plaintiff alleged that the defendants committed perjury while testifying during the state trial of plaintiff's assault and battery action against McElroy. Most courts, when confronted with the question whether law enforcement personnel giving perjurious testimony are liable under section 1983, have concluded they are not. *See, e. g., Myers v. Bull*, 599 F.2d 863, 865 (8th Cir. 1979), *cert. denied*, 100 S.Ct. 213, 444 U.S. 901, 62 L.Ed.2d 138; *Burke v. Miller*, 580 F.2d 108, 109 (4th Cir. 1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); *Blevins v. Ford*, 572 F.2d 1336, 1338 (9th Cir. 1978); *Bennett v. Passic*, 545 F.2d 1260, 1263–64 (10th Cir. 1976); *Brawer v. Horowitz*, 535 F.2d 830, 836–37 (3d Cir. 1976); *Smith v. Sinclair*, 424 F.Supp. 1108, 1113 (W.D.Okla.1976); *but see Briggs v. Goodwin*, 569 F.2d 10, 26 (D.C. Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Spears v. Conlisk*, 440 F.Supp. 490 (N.D.Ill.1977).

We need not now take a position on whether perjurious testimony by law enforcement personnel is actionable under section 1983 since there is no indication plaintiff was damaged in any manner by the testimony. Plaintiff, not McElroy, prevailed in the state tort action.

### 7) *The arrest and charging of plaintiff's brother*

■ Defendants' treatment of plaintiff's brother did not violate any of plaintiff's rights and is therefore not actionable by plaintiff under section 1983.

Thus to summarize, we have concluded plaintiff set forth the following section 1983 cause of action: a deprivation of his fourth and fourteenth amendment rights not to be arrested except upon probable cause. Because a decision on the merits would interfere with a pending state criminal charge, plaintiff may not proceed further until state proceedings are finally terminated.

### B.

Two additional matters remain: municipal liability and the pendent state tort count.

■ 1. Since *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities may be sued directly under section 1983 for "constitutional deprivations visited pursuant to governmental 'custom,'" policy, ordinance, regulation or decision. *Id.*, 690–91, 98 S.Ct. 2036. However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 691, 98 S.Ct. 2036. (emphasis in original).

Plaintiff has failed to show any action, properly attributable to either municipality, which caused any injury to plaintiff.

With respect to the alleged use of excessive force by Officer McElroy of the Warwick department, plaintiff presented no evidence from which a municipal policy of mistreatment of its citizens could be gleaned. We need not therefore get into the question of whether grossly inadequate police training or supervising programs may give rise to municipal liability under section 1983. *Compare Leite v. City of Providence*, 463 F.Supp. 585, 590–91 (D.R.I.1978); *Tur-*

pin v. Mailet, 619 F.2d 196 (2d Cir. 1980); Sims v. Adams, 537 F.2d 829, 832 (5th Cir. 1976). So far as appears from the present record, McElroy's alleged treatment of plaintiff is an isolated incident, and the City of Warwick has done no more than employ a tortfeasor, an insufficient predicate for section 1983 liability.[7] Compare Dominguez v. Beame, 603 F.2d 337, 341 (2d Cir. 1979) (no showing of municipal policy to arrest without probable cause).

Citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), plaintiff argues that the municipalities' failure to take action against the officers amounts to such deliberate indifference as to render the municipalities liable under section 1983 for the officers' actions in furtherance of the conspiracy. Plaintiff contends, "In fact said municipalities have failed to take any action against the Defendant policemen after two civil trials involving one of the policemen as defendant and all of the policemen as witnesses. The towns did nothing in view of allegations of perjury committed in the civil trials."

Estelle v. Gamble was an eighth amendment claim in which the Court held that the deliberate indifference of authorities to a prisoner's serious medical needs would constitute cruel and unusual punishment. It does little to indicate whether or when a city's indifference to charges concerning its employees renders the city itself liable. We do not believe that a municipality's failure to investigate this isolated charge of perjury growing out of civil litigation between a policeman and a citizen would be sufficient, by itself, to establish its liability for the conduct here in question. See Turpin v. Mailet, 619 F.2d 196 (2d Cir. 1980) (a municipal policy ordinarily cannot be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force); Smith v. Ambrogio, 456 F.Supp. 1130, 1137 (D.Conn.1978) (discussing standard for municipal liability predicated on inaction). Indeed, it was not brought out here that the municipality was in fact indifferent. The record does not indicate whether any departmental or municipal investigation of the February 4 incident and its aftermath was ever undertaken or whether the officers were subjected to any internal disciplinary proceedings.[8]

2. The pendent count incorporated the allegations of the section 1983 count and then stated "under the Laws of the State of Rhode Island the defendants are liable in

---

7. Plaintiff argues that the City of Warwick in some manner ratified McElroy's actions, adopted them as its own, and is therefore liable for them. In support of his ratification theory, plaintiff cites Willoughby v. Allen, 25 R.I. 531, 56 A. 1109 (1904), a case addressing a town's liability for the negligent work of the town's highway surveyor. There, no formal written order of the town directing the work appearing, plaintiff sought to establish through the town's payment for the work that the town had authorized it. We fail to see the relevance of this case or how section 1983 liability can be predicated on a ratification theory in the context of this case. Holding the municipalities liable here would ignore the fundamental requirement that there be a causal connection between the action or inaction on the part of the municipality and constitutional wrongs visited on the plaintiff. See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights.").

8. Plaintiff does refer to prosecution of the driving too fast for conditions charge by supervisory officials of the Town of East Greenwich. The evidence is scanty. John Migliaccio, an assistant attorney general of the State of Rhode Island, testified that the driving too fast for conditions charge was assigned to him at one time. He stated that the usual procedure in handling such cases was to contact the municipality involved in the prosecution although he had no memory whether such was or was not done. A note in the case file, not written by him and dated December 18, 1975, states "check with city attorney about status of civil suit." A later note, written by him, states "hold for after civil case settled." If plaintiff is contending the Town of East Greenwich is maliciously prosecuting a baseless charge against him, plaintiff has failed to delineate the involvement of any town official who is sufficiently high in the municipal governmental echelon so that his actions might be considered those of the town, nor has he adduced any facts showing bad faith prosecution. Therefore, plaintiff's action against both municipalities fails.

tort to the plaintiff" without further specification of the tort involved. The district court concluded the tort intended to be alleged was malicious prosecution, an essential ingredient of which is termination of the prior prosecution (the driving too fast for conditions charge) in plaintiff's favor. As this element was lacking, the court concluded plaintiff had failed to state a cause of action and dismissed the pendent count.[9] Plaintiff, however, in his argument in opposition to defendants' motions for directed verdicts, had claimed he had established the tort of abuse of process, which does not require that the prior action have been terminated favorably to plaintiff. The district court did not address this argument and neither do we.

The exercise of pendent jurisdiction is a matter of discretion, not of right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The district court, having dismissed the federal claims, had discretion to consider whether the pendent state claim should be dismissed as well. *Coe v. Bogart*, 519 F.2d 10, 13 (6th Cir. 1975) (federal section 1983 claim decided on merits adversely to plaintiff and pendent state claim not entertained). While technically the discretion, in the first instance, was for the district court to exercise, in the present posture of the case–the federal claim having been dismissed and its future viability being largely contingent on the outcome of the state criminal proceeding–we do not think the abuse of process tort claim should now go forward in the federal court. The district court should retain jurisdiction over the pendent count along with the section 1983 false arrest claim until state proceedings on the criminal charge have been completed. At that time, it can then be determined whether plaintiff does have any viable section 1983 cause of action and the court can decide, should it determine that an abuse of process action has been stated under Rhode Island law, whether the tort claim should proceed.

The judgment dismissing the action against the City of Warwick and the Town of East Greenwich is affirmed; the judgment is otherwise vacated and this action is remanded with directions that the district court retain jurisdiction over plaintiff's pendent count and section 1983 count (to the extent it states a claim upon which relief may be granted) until state trial and appellate proceedings on the driving too fast for conditions charge are completed.[10]

*So ordered.*

---

9. Plaintiff's complaint states that plaintiff is a citizen of New York and that defendant McElroy is a citizen of Rhode Island. The complaint is silent as to the citizenship of defendants Angilly and Joyce although both testified they live in Rhode Island. As plaintiff did not invoke the court's diversity jurisdiction, we do not speculate further whether complete diversity of citizenship existed, and thus we consider the tort claim only under the rubric of pendent jurisdiction.

10. The driving too fast for conditions charge has been pending since 1974. While the delay, in part, appears to have been due to the state's awaiting the outcome of the state tort action, the time has plainly come for the state either to proceed criminally or to dismiss the charge.