Paul J. CAREY and Carol
Carey, Plaintiffs,

v.

CITY OF FALL RIVER, Lionel J.
Desrochers and Raymond E.
Conroy, Defendants.

C.A. No. 84–3416–WF.

United States District Court,
D. Massachusetts.

July 15, 1988.

MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiffs Paul J. Carey, a former Fall River police officer, and his wife Carol Carey have brought this action pursuant to 42 U.S.C. § 1983 alleging that Paul Carey's rights under the First, Fifth and Fourteenth Amendments to the Federal Constitution were violated when he was arrested and prosecuted in retaliation for investigating criminal allegations made against other members of the Fall River police force. Carol Carey has sued for loss of her husband's services, society and companionship. Defendants are the City of Fall River; Raymond E. Conroy, Fall River's Police Chief; and Lionel J. Desrochers, a lieutenant in the Fall River Police Department.

Currently before the court are Conroy's and Desrochers' motions for summary judgment on the ground of qualified immu-

nity. For the reasons stated below, both motions are allowed.

## I. FACTS AND PRIOR PROCEEDINGS

The original complaint in this action was filed on October 29, 1984. The original complaint alleged that on or about July 1, 1983, defendant Conroy ordered, authorized or encouraged defendant Desrochers to seek and obtain a criminal complaint charging Carey with unlawfully influencing a witness furnishing information to a criminal investigator, and corruptly offering a gift with intent to influence the testimony of a witness. Carey further alleged that the foregoing actions were taken in bad faith and without probable cause, and, therefore, in violation of his Fifth and Fourteenth Amendment rights.

On February 4, 1985, Carey moved to amend his complaint to add Carol Carey as a party plaintiff (the "First Amended Complaint"). That motion was allowed on March 12, 1985. Thereafter, all three defendants moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the First Amended Complaint for failure to state a claim upon which relief could be granted. Conroy argued that plaintiffs' claims were barred by the exclusivity provision of the Massachusetts Tort Claims Act, Mass.Gen.L. ch. 258 § 2. In addition, each defendant argued that plaintiffs had failed to allege a constitutional violation. Defendants contended that plaintiffs merely had alleged common law malicious prosecution.

After a hearing, the court denied each defendant's motion. The court concluded that the facts described in the First Amended Complaint were probably inadequate to state a federal claim, but suggested that they might, if elaborated, possibly state two federal causes of action. First, the court suggested plaintiffs might be able to allege a Fifth Amendment substantive due process violation resulting from egregious misuse of legal process. *See Dunn v. State of Tennessee*, 697 F.2d 121, 125 (6th Cir.1982); *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir.1985). Second, the court suggested that plaintiffs might be able to state a federal claim that defendants had

brought criminal charges against Paul Carey in retaliation for Carey's exercise of his First Amendment rights. *See Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 117, 118 (1st Cir.1977); *Rookard v. Health and Hospitals Corp.*, 710 F.2d 41, 46 (2d Cir. 1983). Plaintiffs were granted leave to amend the First Amended Complaint to enable them to articulate more precisely these legal theories.

Plaintiffs' Second Amended Complaint was filed on February 25, 1987. The Second Amended Complaint adequately alleges constitutional deprivations resulting from egregious misuse of legal process and retaliatory initiation of criminal judicial proceedings by Paul Carey's employer and superiors.

Now pending are Conroy's and Desrochers' motions to dismiss or for summary judgment. Both defendants contend they have qualified immunity for each of plaintiffs' two claims. As matters outside the pleadings have been presented to and considered by the court, Desrochers' motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b). In view of the alleged facts and evidence described in this opinion, and for the reasons discussed, the court finds the motions to be meritorious. They are, therefore, allowed.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928 (1st Cir.1983).

Functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict. The crux of

both theories is that there is no genuine issue of material fact to be determined by the trier of fact, and that on the law applicable to the established facts, the movant is entitled to judgment.

*Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 198 (1st Cir.1983) (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.02[10] at 56–43 (2d ed. 1985)).

"[T]o defeat a summary judgment motion, the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." *Kaufman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1171 (1st Cir. 1988). "A genuine issue is 'one in which the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." ' " *Daury v. Smith,* 842 F.2d 9, 11 (1st Cir.1986) (quoting *Perez De La Cruz v. Crowley Towing & Transportation Co.,* 807 F.2d 1084, 1086 (1st Cir.1986) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986))). "Thus, summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case." *Kaufman,* 841 F.2d at 1172. Finally, while "[a] court must be 'particularly cautious' about granting summary judgment when the state of mind of one of the parties is in issue ... the existence of a state of mind issue does not 'automatically preclude summary judgment.' " *Denton v. International Brotherhood of Boiler Makers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Boilermakers Local 29,* 653 F.Supp. 55, 59 (D.Mass.1986) (quoting *Stepanischen,* 722 F.2d at 928–29). The party opposing the motion must still offer "concrete evidence from which a reasonable jury could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. *See also Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975) (must be some indication that party opposing the motion "can produce the requisite quantum of evidence" to entitle him to a trial).

### B. *Qualified Immunity Standard*

The standard for deciding questions of qualified immunity was set out by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Court dispensed with any consideration of the subjective good faith of the defendant government official, *id.* at 815–18, 102 S.Ct. at 2736–38, and held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The court stated further that:

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Id.* at 818–19, 102 S.Ct. at 2738–39 (footnote omitted).

In *De Abadia v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986), the First Circuit addressed what is meant by "clearly established." There the court stated that it is "something less than requiring the public official to show that the principle of law did not exist.... Only rarely do legislatures or courts introduce or change whole principles. More often, the process of change involves a sharpening of lines in the law's grey areas, absent which there could reasonably be excusable mistakes." *Id.* at 1190. As the Court intimated in *Harlow,* however, *see* 457 U.S. at 819, 102 S.Ct. at 2739, and subsequently made more explicit in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the

question of whether the federal statutory or constitutional standard alleged to have been violated was clearly established at the time of the defendant's alleged action may not be analyzed at such a level of generality as "to bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." *Anderson*, 483 U.S. at ——, 107 S.Ct. at 3039. Rather, as Justice Scalia wrote for the Court in *Anderson:*

> [the] cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless that very action in question has previously been held unlawful ...; but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at ——, 107 S.Ct. at 3039.

The Court of Appeals for the First Circuit recently elaborated on this requirement that the question whether a particular right was clearly established be analyzed in light of the unique facts of each case. As the court noted:

> In some instances it may be unclear whether an alleged official action even potentially implicates the constitutional or statutory right relied upon.... On the other hand, the law regarding the alleged violation may have been clearly enunciated, but application of that law to the facts may be unclear.... Or, while the right allegedly violated may have been clear in general outline, it may have been unclear how that right would be balanced against competing rights or interests.

Thus, in assessing a claim of qualified immunity, it is not sufficient for a court to ascertain in a general sense that the alleged right existed, otherwise "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." ... [A] court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate that his actions would violate that right. *Borucki v. Ryan,* 827 F.2d 836, 838 (1st Cir.1987) (quoting *Anderson*, 483 U.S. at ——, 107 S.Ct. at 3039).

■ In addition, as Chief Judge Campbell of the First Circuit has noted, questions of qualified immunity turn on the clarity of *federal* law, rather than on whether the conduct was clearly proscribed by state law. *De Abadia*, 792 F.2d at 1195 (Campbell, C.J., concurring); *see also Donald M. v. Matava*, 668 F.Supp. 703, 708 (D.Mass.1987).

### C. *First Amendment Claim*

■ As suggested initially by the court, the Second Amended Complaint alleges, *inter alia*, that plaintiff Paul Carey was retaliated against by his employer and superiors for investigating criminal allegations made against several other members of the Fall River police force. In general, a public employee may not be discharged or otherwised punished for exercising his constitutional rights, including his First Amendment right to free speech. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *Alicea Rosado*, 562 F.2d at 117, 118; *Rookard*, 710 F.2d at 46. Plaintiffs' theory in this case is that Paul Carey's investigation against his fellow officers was protected by his First Amendment right to free speech, and that defendants' actions constituted retaliation for his exercising that right.

■ The Court continues to believe that retaliation against a police officer for conducting an investigation may abridge his First Amendment right to free speech in certain circumstances. This is, apparently, a novel theory. Counsel for Carey did not discern it before the court suggested it in connection with the initial motion to dismiss. Since then, neither counsel nor the court have discovered any federal cases establishing the validity of this theory, before or after 1983.

Accordingly, the court concludes that the individual defendants are entitled to qualified immunity on their First Amendment claims. This is a case where it is "unclear whether an alleged official action even potentially implicates the constitutional or statutory right relied upon." *Borucki*, 827 F.2d at 838. In any event, with regard to the alleged facts of this case, it is evident that the alleged right was not "established with sufficient particularity that a reasonable official could anticipate that his actions would violate *that right*." *Id.* (emphasis added). While it may have been clear in 1983 that the alleged conduct was wrong, it was not clearly established that it would violate federal law. Thus, the individual defendants have qualified immunity concerning the First Amendment claim.

### D. *Substantive Due Process/Malicious Prosecution Claim*

The Second Amended Complaint also alleges that defendants, in bad faith and without probable cause, and to punish Carey for performing his constitutionally protected official duties, obtained a criminal complaint against Paul Carey. The Second Amended Complaint further alleges that after a trial Carey was acquitted of the charges brought against him.

Conroy and Desrochers are entitled to qualified immunity regarding this claim as well. These contentions essentially assert the common law tort of malicious prosecution. *See Landrigan v. City of Warwick*, 628 F.2d 736, 745 n. 6 (1st Cir.1980) (tort of malicious prosecution consists of the initiation of criminal proceedings without probable cause and for an improper purpose, which terminate in the plaintiff's favor). In *Landrigan*, the First Circuit discussed whether, and under what circumstances, malicious prosecution might rise to the lev-

el of a constitutional violation for which § 1983 provides a remedy. While expressly declining to decide whether the filing of unfounded or malicious claims or suits, without more, is actionable under § 1983, 628 F.2d at 746, the court noted that "[s]omewhat distinct are circumstances where the acts constituting malicious prosecution under state law also involve[ ] independent constitutional deprivations." *Id.* at 745 (footnote and citations omitted). In *Landrigan*, the plaintiff had alleged that, as part of their malicious prosecution or abuse of process, the defendants had arrested him without probable cause. *See id.* at 746. The court found that the alleged arrest without probable cause made plaintiff's claim redressable under § 1983.

Desrochers and Conroy have qualified immunity on the alleged constitutional violation arising out of the state law torts of malicious prosecution or abuse of process. First, prior to 1983, in *Landrigan*, the Court of Appeals for the First Circuit had declined to decide whether an egregious form of malicious prosecution, not implicating another clearly established constitutional right, could be deemed a constitutional violation. In this case there is no clearly established constitutional right implicated in addition to the allegedly egregious malicious prosecution. More specifically, as described earlier, the First Amendment right of free speech implicated in this action was not clearly established in 1983. Thus, the court concludes that no constitutional counterpart of malicious prosecution or abuse of process was clearly established in 1983 and, therefore, the individual defendants are entitled to qualified immunity on this claim.[1]

This conclusion is not qualified by plaintiffs' contention that Desrochers and Conroy violated departmental regulations by failing to interrogate Carey prior to filing

---

**1.** Although it is not necessary to the court's conclusion, an additional basis for finding that defendants Desrochers and Conroy have qualified immunity with respect to plaintiffs' substantive due process/malicious prosecution claim is provided by the First Circuit's opinion in *Floyd v. Farrell*, 765 F.2d 1 (1st Cir.1985). The court in *Floyd* addressed the circumstances in which a police officer will have qualified immunity from a claim that he sought an arrest warrant without probable cause. After noting

that under the "objective reasonableness" test of *Harlow v. Fitzgerald* neither actual motives nor the officer's subjective assessment of the facts is relevant to the issue of qualified immunity, *Floyd*, 765 F.2d at 6, the court in *Floyd* held that "[a]n officer will be held liable for seeking an arrest warrant later found to be without probable cause only if there *clearly* was no probable cause at the time the arrest was made." *Id.* at 5 (emphasis in original). Because *Floyd* also in-

charges. As described earlier, issues of qualified immunity turn on the clarity of *federal* law. The Supreme Court has found that provisions in police regulations will not serve to clearly establish federal law for qualified immunity purposes. *See Davis v. Scherer*, 468 U.S. 183, 193–197, 104 S.Ct. 3012, 3018–21, 82 L.Ed.2d 139 (1984).

## III. CONCLUSION AND ORDER

For the foregoing reasons, Desrochers' and Conroy's motions to dismiss are hereby ALLOWED. The case remains, however, against the City of Fall River. All discovery shall be completed by January 15, 1989.

volved a claim for malicious prosecution, *id.* at 4, the court believes the analysis applies to this case.

It cannot be said that when defendants in this case sought out the criminal complaint against Paul Carey they "clearly" did not have probable cause. According to an affidavit submitted by defendant Desrochers, the allegations against Carey were based on a written statement filed by a complaining witness and had substantially been corroborated by other witnesses and evidence prior to the filing of charges. The information available to defendants Desrochers and Conroy, as described in Desrochers' affidavit, gave them probable cause to believe Carey had acted improperly and illegally. Plaintiffs do not contend that Desrochers or Conroy had actual knowledge that the allegations against Carey were false. *See Floyd*, 765 F.2d at 6; *Krohn v. U.S.*, 742 F.2d 24, 31 (1st Cir.1984).