**BURT v. CITY OF NEW YORK et al.**

No. 275, Docket 20120.

Circuit Court of Appeals, Second Circuit.

June 26, 1946.

John C. Burt, pro se.

Robert E. Hugh, and John J. Bennett, Corp. Counsel, both of New York City, (Seymour B. Quel, of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a dismissal of his amended complaint in an action for an injunction and for damages under the "Civil Rights Act"—§§ 43 and 47(3) of Title 8, U.S.C.A. The action was brought against the City of New York, the "Board of Standards and Appeals," the "Department of Housing and Building," the "Commissioner of Buildings," the "Borough Superintendent," and the chief engineer and two examiners of the Building Department. The amended complaint is hard to understand, but, considering the latitude to be allowed to pleadings under Rule 8(f), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c (Dioguardi v. Durning, 2 Cir., 139 F.2d 774), we think that the following can be drawn from it. The plaintiff is a "registered architect," practising in New York, who in the course of his business must make applications to officials of the Building Department which they must approve, in order that he may do his work. Those officials—the defendants—have in many instances deliberately misinterpreted and abused their statutory power in order to deny his applications or impose upon him unlawful conditions. Not only have they done this, but they have selected him for these oppressive measures, unconditionally approving the applications of other architects, similarly situated. In the seventh article of his amended complaint he has specified eight instances, in seven of which the defendants have in this way singled him out for unlawful oppression. These allegations go further than merely to assert that the plaintiff has been the victim of deliberate abuse of power by state officials, which would not be enough. They assert that he is the victim of a "purposeful discrimination"; being, if not the only architect so practised upon, at least one, who has suffered what others have in general escaped. Indeed, the concluding allegations are that the defendants' treatment of the plaintiff was actuated by personal hostility.

Whatever may have been true before, it seems to us that, since the decision of the

Supreme Court in Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497, such allegations will support an action under § 43 and § 47(3) of Title 8, over which § 41(14) of Title 28 U.S.C.A. gives the district court jurisdiction. It is quite true that in that case the court sustained a dismissal of the complaint, and that here, as there, there are involved no "privileges or immunities of citizens of the United States." Nevertheless, it is clear that, had the complaint there read a little differently, the majority would have held that a case had been made out, based upon a denial of the equal protection of the laws under §§ 43 and 47(3). For example, on page 8 of 321 U.S., on page 401 of 64 S.Ct., the Chief Justice said that an "unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." Again at the bottom of page nine of 321 U.S. 1, 64 S.Ct. 397, 402, 88 L.Ed. 497: "Such discrimination may also be shown to be purposeful, and hence a denial of equal protection." And finally, actual decision was that, "the lack of any allegations in the complaint here, tending to show a purposeful discrimination" could not be supplied merely by the allegation that the defendants had acted "willfully" and "maliciously." Indeed, the dissent of Justice Douglas and Justice Murphy was put expressly and solely upon the ground that they thought those adverbs sufficient to admit proof of "purposeful discrimination." It is true that Justice Frankfurter took quite another ground for his concurrence, and it does not appear what was the ground of Justice Rutledge's vote; but the decision definitely settled it, that, if a complaint charges a state officer, not only with deliberately misinterpreting a statute against the plaintiff, but also with purposely singling out him alone for that misinterpretation, it is good against demurrer.

Further, if there remained any longer doubt whether the act of a state officer is the act of the state, if done under the pretended justification of a statute, that doubt was laid by Screws v. United States, 325 U.S. 91, 107–112, 64 S.Ct. 1031, 89 L.Ed. 1495. It is true that that case involved § 52 of Title 18, U.S.C.A.—the criminal sanction for the "Civil Rights Act"; but, as Judge Biggs observed in Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 248, the phrase "under color of any statute" occurs in both § 43 of Title 8, U.S. Code, and § 52 of Title 18, and must be taken as having the same meaning in each. See also Hague v. Congress of Industrial Relations, 307 U.S. 496, at page 510, 59 S.Ct. 954, 83 L.Ed. 1423. It is also true that in Screws v. United States, supra (325 U.S. 91, 64 S.Ct. 1031, 89 L.Ed. 1495), the Supreme Court sustained the criminal statute only because of the interpolation of the word, "willfully," by the amendment of 1909, and that neither § 43 nor § 47(3) of Title 8, U.S. C.A., contains that word. We need not, however, consider whether a statute, creating only civil liabilities enforceable by injunction or execution, is subject to any constitutional objection if its terms are too vague to advise offenders what acts it forbids. Snowden v. Hughes, supra (321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497), construed §§ 43 and 47(3) of Title 8, U.S.C.A. to include just that factor of "purposeful discrimination" which the word, "wilfully," contributed to § 52 of Title 18, U.S.C.A.; and, so limited, there could be no doubt of its validity, even if the objection would have been otherwise tenable, which we do not mean to suggest. Our conclusion that the amended complaint stated a cause of action, is confirmed by Picking v. Pennsylvania, supra (3 Cir., 151 F.2d 240, 247), although not all the points there decided are before us here, and we reserve decision as to those which are not.

■ A final word as to the point that the plaintiff has not shown that he exhausted his remedies. So far as these lay in an appeal to the Board of Standards and Appeals under § 666 of Chapter 27, of the New York City Charter, the amended complaint included the Board in its charges. That is indeed not true as to the plaintiff's remedy of certiorari in the Supreme Court of the state under § 668e—1.0 of Chapter 27 of the Administrative Code, for it does not appear that he attempted such a review. Subdivision (a) of that section provides that the petition shall set forth in what ways the Board's "decision is illegal * * * spe-

cifying the grounds of the illegality"; and for argument we may assume that what the plaintiff alleges in his amended complaint would constitute the sort of "illegality" which could be reached by certiorari. Further, we may even assume that the writ would be a bar to any injunction in this case, though we express no opinion upon the point. However that may be, clearly it is not an effective substitute for the damages which the plaintiff may have suffered from the subordinate officers whom he has made defendants, or from the Board itself. The risk of a recovery against them for these does on its face appear substantial; and indeed in Picking v. Pennsylvania R. Co., supra (3 Cir., 151 F.2d 240), it was held that the "Civil Rights Act" actually tolled the privilege of a judge. The only protection at present is in the difficulty of proving such cases which is great; but, so far as we can see, any public officer of a state, or of the United States, will have to defend any action brought in a district court under § 41(14) of Title 28, U.S.C.A. in which the plaintiff, however irresponsible, is willing to make the necessary allegations.

Judgment reversed; cause remanded.