**BRANDHOVE v. TENNEY et al.**

No. 12430.

United States Court of Appeals
Ninth Circuit.

June 30, 1950.

Rehearing Denied Aug. 9, 1950.

Martin J. Jarvis, Richard O. Graw and Elmer P. Delaney, all of San Francisco, Cal., for appellant.

Harold C. Faulkner, Wilbur F. Mathewson, Melvin, Faulkner, Sheehan & Wiseman, all of San Francisco, Cal., Fred N. Howser, Atty. Gen. of California, C. J. Scott, Asst. Atty. Gen., Fred B. Wood, San Francisco, Cal., for appellees other than Elmer E. Robinson.

McGuire & Lahanier, W. A. Lahanier, San Francisco, Cal., for appellee Elmer E. Robinson.

Before HEALY, Circuit Judge, and MATHES and DRIVER, District Judges.

HEALY, Circuit Judge.

Appellant sued under §§ 43 and 47(3) of Title 8 U.S.C.A. to recover damages for alleged violations of his civil rights.[1] With

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

one exception the defendants (appellees) are members of what was known as the Tenney Committee of the California State Senate, empowered by a resolution adopted in 1947 to inquire into un-American activities. The remaining defendant is Mayor Robinson of San Francisco. The appeal is from a judgment of dismissal for failure of the complaint to state a cause for relief.

The complaint incorporates an extensive amount of evidentiary matter, bearing for the most part upon a hearing of the Tenney Committee (hereafter referred to as the Committee) before which appellant was summoned as a witness.[2] The pleading shows that on January 28, 1949 appellant circulated among the members of the California legislature, then in session at Sacramento, a protest against an appropriation for the continuance of the Committee's activities. The protest, or petition as it is termed in the complaint, charged that the Committee had "used" appellant "as an instrument to smear Congressman Franck R. Havenner as a 'Red' when he was a candidate for Mayor of San Francisco in 1947, and that the Republican machine in San Francisco and the Campaign management of Elmer E. Robinson, Franck Havenner's opponent, conspired with the Tenney Committee to this end." The particulars of the charge are lengthy but unimportant here. While appellant was engaged in circulating his protest a subpena was served upon him directing him to appear as a witness before the Committee on the following day, January 29, at three o'clock in the afternoon. He appeared at that time with his counsel.[3]

Upon being sworn as a witness appellant gave his name, residence, and occupation, and then referred the Committee to his counsel, who objected to any further questioning. One of the grounds of the objection was that "The purpose of such questions has not been disclosed to Mr. Brandhove and the same are not for a legislative purpose or in aid of legislation." Other grounds were that appellant had been subpenaed because of the charges made in his petition to the legislature; that the Committee was not and could not be a fair and impartial tribunal; that it was engaged in a political and not a legislative investigation in attempting to acquit itself of appellant's charges; that a joint committee of the Assembly and Senate was the only proper body to investigate such charges; and that the Committee had itself vouched for appellant's veracity by releases and reports in the past. The objections were overruled by the Chairman, but appellant was instructed by his counsel not to respond to questioning. The Chairman then inquired of appellant, "Is it going to be your conduct that you are not going to answer any questions presented to you by the Committee?" to which the answer was, "On advice of counsel, I will not, no, sir."

Questions were then directed to appellant concerning his acquaintance with various named persons, and he was interrogat-

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 8 U.S.C.A. § 43.

"If two or more persons in any State or Territory conspire * * *, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 8 U.S.C.A. § 47(3).

2. A transcript of the Committee hearing is attached as an exhibit.

3. Pursuant to a requirement of the state constitution, the legislature adjourned for a period of 30 days, commencing at three o'clock p. m. on January 29, 1949, hence was in recess at the time fixed for appellant's appearance.

ed with respect to his relations with Communists and his affiliation with the Communist Party.[4] All of the questions he declined to answer on the grounds already indicated. The interrogation was presently dropped and apparently the witness was permitted to leave the stand. In the subsequent course of the hearing Chairman Tenney remarked that "Mr. Brandhove has a criminal record." He thereupon made a lengthy statement for the record, in the course of which he recounted crimes with which he said appellant had been charged in various cities over a period ranging from 1930 to 1947, including, among other things, charges of sodomy, grand theft, burglary, malicious mischief, and defrauding an innkeeper. This statement is alleged in the complaint to have been false. Other derogatory matter put into the record by the Chairman included a reference to a newspaper article wherein an affidavit of appellant was termed "a tissue of lies." There was much more along the same line. Finally, Mayor Robinson was called and testified at length in refutation of the charges Brandhove had made against him.

During the course of the session the Committee resolved that a complaint be filed in the proper court charging appellant with a misdemeanor in refusing to answer questions. This course was followed and appellant was arrested on a complaint preferred by the Chairman and was confined in jail from February 1 to February 15, 1949. A trial of the charge before a jury on March 5, 1949 resulted in a disagreement, and the case was dismissed four days later on motion of the district attorney.

Appellant's complaint pieces together these proceedings and incidents, plus the sending by the Committee of two telegrams described in the footnote.[5] The pleading then alleges that the various acts described were "done or participated in by said defendants with malice and intent to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights of free speech and to petition the Legislature for redress of grievances, and also to deprive him of the equal protection of the laws, due process of law, and of the enjoyment of equal privileges and immunities as a citizen of the United States under the law, and so did intimidate, silence, deter, and prevent and deprive plaintiff."

Counsel for appellees argue that this allegation amounts to no more than the conclusions of the pleader, and they claim that the evidentiary matter incorporated in the complaint belies the conclusions. We are unable to agree with the latter proposition. The conclusions are of ultimate fact and some of them appear not to be without a measure of support in the circumstances disclosed.

In such posture of affairs the case should proceed to trial. Of course, a jury or judge may conclude from the showing that the Committee did no more than make legitimate use of the power conferred upon it. The questions put to appellant, taken by themselves, seem to be unobjectionable, and they bear substantial relation to the general subject the Committee was empowered to inquire into. In these inquiries, too, it is possible to discern a purpose on the Committee's part of determining whether sworn information appellant had formerly given the Committee might still be relied on as true, or whether it should now be disregarded as false. We think, also, that

4. These same questions, it is alleged, had been put to appellant at former sessions of the Committee, and had been answered by him.

5. Copies of these telegrams are attached to the complaint as exhibits. They are dated January 28, 1949, are signed by the Committee chairman and vice-chairman, and are addressed to the district attorneys of San Francisco and Alameda counties. They refer to Brandhove's charges circulated among the legislators and to sworn testimony of Brandhove earlier given before the Committee, said in the telegrams to be inconsistent or at variance with the charges. The officials addressed are urged to charge Brandhove with perjury or to have the matter presented to the grand jury of their respective counties. It does not appear whether the officials addressed took any action responsive to the telegrams, but it is fairly inferable that they did not.

the Committee, had it seen fit to do so, might with propriety have questioned appellant relative to the charges he had made against it. The California Court has held that when the integrity of a legislative body, or of its members, is impugned it may lawfully inquire into the subject matter.[6] And there is a state statute making it a misdemeanor for a person summoned as a witness before a legislative committee to refuse to answer material and proper questions. [7]

■ An individual haled before an inquisitorial body of this type can have no legal ground for complaining of the body's use of its powers even though, as a consequence of the inquisition, the individual be made to suffer serious and unjustified harm to his reputation or his ability to earn a living. But he may have grounds for complaining of an *abuse* by the body of its powers if such conduct goes so far as to abridge a federally protected right.[8] Appellant, it must be remembered, did not stand on equal terms with this Committee. He had the status of a private citizen only, whereas the Committee was armed with the power of the state. In doing what it did here it was at the least acting under color of authority.

■ ■ Appellant had the constitutional right freely to speak his mind and expose his thoughts. If what he had said in his petition was false and libelous, appellees had the same opportunity enjoyed by other people to seek redress against him in the courts, for, unlike themselves, he possessed no immunity. True, the Committee did not prevent him from exercising his right; he did succeed in making his message public. But the statute in question (§ 43) must be conceded a more liberal range than that. Appellant is entitled not only to exercise the right but to be protected against official reprisal for having exercised it.[9] And con-

sidering his pleading as a whole it is rationally possible to believe that the Committee purposely undertook, under an appearance of regularity, to intimidate, punish and oppress him for having done what he did. The precipitate convening of the Committee, the hurried summoning of appellant to attend upon it, the abrupt dispatch of telegrams to prosecuting officials urging the institution of perjury charges, the gross impropriety of incorporating into the Committee minutes an allegedly false record ascribing to the witness the commission of infamous crimes, all may serve to lend color to the inferences of malicious and purposeful oppression sought to be drawn in the pleading. Even the course of questioning, innocent as it may seem when considered by itself, may be thought a calculated endeavor having no other purpose than that of putting the witness in a situation where he might be prosecuted for a criminal offense.

■ We express no opinion as to where the truth lies. Our purpose is merely to point out that the alleged circumstances of this case are too ambiguous and complex to warrant judgment on the complaint alone. The motion to dismiss it for insufficiency should have been denied and the defendants required to answer. Nor do we wish to be considered as expressing settled views on the law of the case, other than that pertaining to the consequences of an unwarranted interference, if any there was, with the right of freedom of speech.

■ The case as against appellee Robinson stands on a different footing. He was not himself acting officially or under color of authority. The complaint alleges that before the service of the subpena and after the content of the circulated petition had become known, appellee Tenney "immediately communicated by telephone with defendant Elmer E. Robinson advising him

---

6. Ex parte McCarthy, 29 Cal. 395, 404.

7. Section 9412 of the California Government Code.

8. Cf. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330; Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497.

9. Bomar v. Keyes, 2 Cir., 162 F.2d 136. And cf. Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240; Burt v. City of New York, 2 Cir., 156 F.2d 791; Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131; Douglas v. City of Jeanette, 1943, 319 U.S. 157, 63 S.Ct. 882, 87 L.Ed. 1324, 146 A.L.R. 81.

of the charges contained in said petition and the stated purpose of the same." Then and there, it is alleged, the two discussed ways and means of best thwarting appellant's charges and defeating their purpose, and agreed that a hearing should be held by the Committee on the following day at which Robinson should appear as a voluntary witness and deny the truth of the charges. It is more than doubtful whether these allegations are sufficient to implicate Robinson in a conspiracy with the Committee to abridge any of appellant's federally protected rights. We are unable to say that the court was in error in dismissing the complaint as to him.

Otherwise the judgment of dismissal is reversed and the cause remanded for further proceedings.