James E. SHOCK, Appellant,

v.

M. L. TESTER, Carl E. Miller and Lieutenant Floyd Weaver, Appellees.

No. 19239.

United States Court of Appeals Eighth Circuit.

Jan. 10, 1969.

James E. Shock, pro se.

Don Langston, Asst. Atty. Gen., Little Rock, Ark., for appellees, Joe Purcell, Atty. Gen., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The plaintiff was involved in an automobile accident with "Judge" Sanson, a "well known local political figure." He subsequently brought action alleging that the Arkansas State Highway Patrolmen, who had investigated the accident, had failed to arrest the "Judge" for reckless and drunken driving and had prepared and filed an accident report which they knew to be false. He further alleged that supervisors of the State Highway Patrol had refused to correct the false report although he had requested them to do so. He asked the trial court to issue an injunction requiring the patrolmen to correct the accident report on the grounds that the report had deprived him of his rights under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.[1]

1. The complaint stated that the District Court had jurisdiction under 42 U.S.C.A. § 1983, 28 U.S.C.A. § 1343 and the Fourteenth Amendment to the United States Constitution, Section 1. Section 1983 of 42 U.S.C.A. provides:

"Every person who, under color of any statute, ordinance, regulation, custom,

The trial court dismissed the plaintiff's complaint on the grounds that it failed to state a claim upon which relief could be granted. We affirm.

■ For the purpose of this appeal, we consider the facts alleged by the plaintiff to be true[2] and apply the test that a complaint is not to be held insufficient unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.[3] The facts as alleged are:

On December 24, 1967, the plaintiff was driving his automobile on Arkansas State Highway No. 136 when an automobile, driven by the "Judge," crossed into the plaintiff's line of traffic and collided with the plaintiff's automobile. The accident was caused by the unlawful and "apparently" drunken driving of the "Judge." The plaintiff's automobile was damaged and his daughter's leg was broken. An Arkansas State Highway Patrolman was called to the scene of the accident by "Judge" Sanson. When he arrived, he failed to require the "Judge" to take a drunk test, he failed to take skid mark measurements and failed to give a ticket to the "Judge" or the plaintiff. Thereafter, the patrolman prepared and filed a false accident report which "apparently" was prepared with the assistance of local counsel and was "apparently" designed to alter the material facts of the accident.

A few days later, the plaintiff went to the headquarters of the State Highway Patrol and secured a copy of the report. He informed the Acting Director that the report was false. The Acting Director referred the matter to a Lieutenant in the department. The "Lieutenant attempted to stop any objection of plaintiff by harshness and statements so uttered as to imply threat to the mind of plaintiff."

In brief and oral argument, the plaintiff added: that he is a white member of the lower class and a victim of a crime committed by a prominent member of the upper class; that the report was not simply erroneous or false but was a "premeditated and unmitigated lie for the purpose of protecting a criminal" (presumably the "Judge"); that "every time a member of the lower class has a wreck with one of the elite, he can be sure of a lie or lies on the police report if they will benefit the elite anarchists;" that the report is "a state lie" constituting "substantial discrimination of an invidious nature against an individual."

■ In considering whether the District Court erred, we must disregard those contentions of the plaintiff made in brief or oral argument, however strongly felt and urged, which were not set forth in his complaint. When this is done and the allegations are viewed in their broadest possible light, the plaintiff's claim appears to be that the patrolmen, acting under the color of law, denied the plaintiff due process and equal protection of the laws by knowingly and intentionally[4] preparing, filing and fail-

---

or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Jenson v. Olson, 353 F.2d 825 (8th Cir. 1965); Bonnot v. Congress of Independent Unions Local #14, 331 F.2d 355 (8th Cir. 1964); Gibson v. Reynolds, 172 F. 2d 95 (8th Cir.), cert. denied, 337 U.S. 925, 69 S.Ct. 1170, 93 L.Ed. 1733 (1949).

3. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Kash Industries, Inc. v. Peterson Manufacturing Co., 332 F.2d 1002 (8th Cir. 1964).

4. The intentional nature of the patrolmen's acts was alleged in the complaint as follows:
"THAT Plaintiff, and his family, cannot have freedom while living in fear, and danger to life and limb without protection of the law, and such danger to life and limb accompanied by a refusal of the state to give protection has occurred, and is the subject of this cause of action. State officials, power, property, and prestiege [sic] have been

ing to correct a false accident report. In this light, the issue is somewhat broader than it appeared to be to the District Court. It viewed the complaint as alleging the accident report was false rather than intentionally so:

"There is nothing unusual in one or more of the parties to an automobile collision in being in disagreement with the policeman's report, and the necessity of such a report being factually correct has not yet achieved the status of the federally constituted constitutional right. If this were true, there are not enough federal courts in this country to decide such issues."

Although we view the complaint in the broader light, we reach the same conclusion as the District Court.

■ Initially, we note that although the plaintiff alleged that he was denied due process, the principal thrust of his complaint was that he was denied the equal protection of the laws. His conclusionary allegations of the denial of due process are entirely unsupported by allegations of fact tending to show how or whether he was deprived of life, liberty and property by the actions of the State Highway Patrolmen. We would add that such deprivation can not be assumed as under the Arkansas law, an accident report can not be used as evidence in a criminal or civil proceeding. Ark.Stat.Ann. § 75–910 (1957).

We turn to a discussion of plaintiff's contention that he was denied his right under the equal protection clause of the Constitution. Here, we are faced with the threshold question of whether the plaintiff has alleged a sufficient private or public interest to permit him to maintain this action. Indeed, it is not clear whether the plaintiff's primary concern is to have the accident report corrected so as to reflect the fact that the "Judge" had been driving in violation of the law or to reflect the fact that the plaintiff had been using due care at the time the accident occurred. As the "standing issue" was neither briefed nor argued, we will not consider it in this opinion. Our failure to do so, however, should not be considered as indicating that we feel that the plaintiff has in fact been adversely affected and has standing. See, 3 Davis, Administrative Law Treatise §§ 22.02, 22.18; Jaffe, Judicial Control of Administrative Action, pp. 459–545.

■ It is proper for a person adversely affected to bring an action under 42 U.S.C. § 1983 on the grounds that he has been denied his rights under the equal protection clause of the Constitution.[5]

■■ The equal protection clause is directed to every form of state action—legislative, executive or judicial. Ex Parte Virginia, 100 U.S. 339, 347, 25 L. Ed. 676 (1880). See, the Right to Nondiscriminatory Enforcement of State Penal Laws, 61 Colum.L.Rev. 1103, 1105 (1961), with cases cited. It prohibits discriminatory administration of valid statutes.

"* * * Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. * * *"

---

used to substantially, invidiously, and intentionally violate the rights of Plaintiff and his family in ways inconsistent with the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, Article 1, and federal law. * * *"

5. Moss v. Hornig, 314 F.2d 89 (2d Cir. 1963); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959). See also, Snowden v.

Hughes, 321 U.S. 1, 6–7, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Hague v. C.I.O., 307 U.S. 496, 526, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Contra, Ortega v. Ragan, 216 F.2d 561 (7th Cir. 1954), cert. denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955); Bottone v. Lindsley, 170 F.2d 705 (10th Cir. 1948), cert. denied, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949).

Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). See also, The Right to Nondiscriminatory Enforcement of State Penal Laws, supra at 1106–1122. Compare, United States v. Rickenbacker, 309 F.2d 462, 464 (2d Cir. 1962), cert. denied, 371 U.S. 962, 83 S.Ct. 542, 9 L.Ed.2d 509 (1963); Grell v. United States, 112 F.2d 861, 875, 876 (8th Cir. 1940).

■■ However, it is not enough to determine that 42 U.S.C. § 1983 under which the plaintiff brought this action encompasses the equal protection clause. We must also determine whether the plaintiff has alleged that he, in fact, has been denied his rights under the equal protection clause. We hold that he has not because he failed to allege that the acts of the patrolmen were ones of "intentional or purposeful discrimination."[6] Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397 (1943). See, 66 Harv.L.Rev. 1285, 1293–94 (1953).

In *Snowden,* the plaintiff alleged that state officials had willfully and maliciously refused to certify him as a candidate for public office even though he had qualified himself for nomination. In affirming a dismissal of the complaint, the Supreme Court stated:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of *intentional or purposeful discrimination.* This may appear on the face of the action taken with respect to a particular class or person, * * * or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, * * *. But a discriminatory purpose is not presumed, * * .*

there must be a showing of 'clear and intentional discrimination,' * * *." (Emphasis added.)

Snowden v. Hughes, 321 U.S. at 8, 64 S.Ct. at 401.

Judge L. Hand considered and applied the *Snowden* test in Burt v. City of New York, 156 F.2d 791 (2d Cir. 1946). There, an architect alleged that officials of the New York Building Department—

" * * * have in many instances deliberately misinterpreted and abused their statutory power in order to deny his applications or impose upon him unlawful conditions. Not only have they done this, but they have selected him for these oppressive measures, unconditionally approving the applications of other architects, similarly situated. * * *"

*Id.* at 791.

He also alleged that he had been singled out on seven occasions for unlawful oppression. Judge Hand stated:

" * * * These allegations go further than merely to assert that the plaintiff has been the victim of deliberate abuse of power by state officials, which would not be enough. They assert that he is the victim of a 'purposeful discrimination'; being, if not the only architect so practised upon, at least one, who has suffered what others have in general escaped. Indeed, the concluding allegations are that the defendants' treatment of the plaintiff was actuated by personal hostility." (Emphasis added.)

*Ibid.*

The principles set forth in *Snowden* and *Burt* settle the issue here. The plaintiff has failed to allege that the acts of the patrolmen in preparing, filing and failing to correct a false accident report though deliberate and wrongful were intended to discriminate against the plaintiff or in favor of the "Judge."

---

6. Not every grievance that an individual has against the government, even though meritorious, reaches constitutional proportions. It has been suggested the position of ombudsman be established to aid in resolving those that do not. See, Arnold, An Ombudsman for Arkansas, 21 Ark.L. Rev. 327 (1967).

See, Powell v. Workmen's Compensation Bd. of State of New York, 327 F.2d 131, 137 (2d Cir. 1964).

It is obvious from the plaintiff's brief and from oral argument that he seriously believes that the patrolmen acted as they did because the "Judge" was a member of the "establishment" and the plaintiff was not. But his complaint, however liberally construed, does not so allege.

Affirmed.