72 F.3d 138
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Vance H. SMITH, M.D.; Deborah P. Smith, R.N., RVT,
Plaintiffs-Appellants,
v.
EASTERN NEW MEXICO MEDICAL CENTER; Orson Treloar; John
Kiker; Mike McGuire; Richard Mooney; Thor
Stangebye; Kevin Lowe; Matt Foster;
Donald Wenner; Emmit
Jennings, Defendants-Appellees.
 No. 94-2213 & 94-2241.
 United States Court of Appeals, Tenth Circuit.
 Dec. 19, 1995.
 
 Before ANDERSON, HOLLOWAY, and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs Vance H. Smith and Deborah P. Smith brought this action asserting fourteen federal civil rights, antitrust and state law tort claims against defendants. The district court dismissed one claim under Fed.R.Civ.P. 12(b)(6) and granted summary judgment to defendants on the other claims. The court also imposed sanctions against plaintiffs. Plaintiffs appeal. We have jurisdiction under 28 U.S.C. 1291.
 
 I.
 
 3
 Vance Smith is a vascular surgeon who had medical privileges at Eastern New Mexico Medical Center (ENMMC), a general hospital in Roswell, from 1985 through 1991. Deborah Smith is a registered nurse and a registered vascular technician who operated a noninvasive vascular laboratory on property leased from ENMMC between 1984 and 1991. The individual defendants are doctors who were members of executive committees at ENMMC at various times between 1984 and 1991.
 
 
 4
 Plaintiffs brought this action in June 1992 alleging that they involuntarily left their positions at ENMMC in 1991 following a series of wrongful disciplinary actions by defendants against Vance Smith dating back to 1985. Plaintiffs contend that defendants' actions were improper, malicious and motivated by personal animosity against Vance Smith and were intended to drive plaintiffs out of town. Their second amended complaint contains fourteen counts alleging violations of their civil rights to due process, liberty interests and equal protection, breach of contract, tortious interference with business relations, defamation, infliction of emotional distress, and violation of state and federal antitrust laws.
 
 
 5
 On October 5, 1993, defendants moved to dismiss plaintiffs' equal protection claims for failure to state a claim. The district court granted this motion on August 9, 1994, on the basis that plaintiffs failed to allege membership in a constitutionally protected group. 4 Appellants' App. at 1391. On April 14, 1994, defendants moved for sanctions on the basis that plaintiffs had responded to discovery requests improperly and in bad faith. The court granted the motion on June 23, 1994, deeming certain requests for admission admitted and ordering plaintiffs to pay defendants' attorney fees incurred in connection with the motion. On April 18, 1994, defendants filed sixteen motions for summary judgment. Plaintiffs responded on June 3. In its September 26, 1994 memorandum opinion and order, the court granted the motions and ordered the case dismissed.
 
 
 6
 In appeal No. 94-2241, plaintiffs contend that the district court erred by (1) granting summary judgment against them on their due process and liberty interest claims; (2) granting evidence preclusion sanctions against them for their responses to defendants' discovery requests; and (3) dismissing their equal protection claims. In appeal No. 94-2213, plaintiffs challenge the court's award of monetary sanctions against them for their responses to defendants' discovery requests.[2] Contending that plaintiffs' arguments are frivolous, defendants request that they be awarded their attorney fees on appeal as a sanction for a frivolous appeal.
 
 II.
 A. Summary Judgment
 
 7
 The procedural background regarding the summary judgment motions and responses will focus our analysis. After defendants filed their sixteen motions for summary judgment, plaintiffs moved for "Establishment of a Fair and Reasonable Briefing Schedule" in which they requested leave to file one statement of material facts applicable to all claims and consolidate their legal arguments into eight responses and to extend the due date for their responses. The court did extend the due date for plaintiffs' responses (beyond the date they requested) but otherwise denied the motion (apparently in accordance with a local administrative order requiring separate submission and docketing of motions and responsive pleadings). In doing so, the court also directed plaintiffs to comply with the court's local rules, including Local Rule 56.1(b). This rule requires in relevant part that
 
 
 8
 [a] memorandum in opposition to the [summary judgment] motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted unless specifically controverted.
 
 
 9
 In its order granting defendants' summary judgment motions, the court found that plaintiffs had not complied with their obligations under the local rules:
 
 
 10
 In opposition to Defendants' motions, plaintiffs effectively defaulted their case by failing to comply with the clear and unambiguous requirements of the local and federal rules of civil procedure and the orders of this court. Plaintiffs failed to produce any admissible evidence identifying, with the degree of specificity contemplated by Fed.R.Civ.P. 56(e), any genuine issue as to the "undisputed" material facts established by Defendants. Instead of filing individually-tailored responses, as ordered by this Court, Plaintiffs submitted a nearly identical statement of 29 "Disputed/Undisputed Material Facts" in response to each of Defendants's sixteen motions. As a result, Plaintiffs failed to factually refute any of Defendants' factually supported legal arguments for summary judgment. Not only did Plaintiffs not comply with Local Rule 56.1(b) by failing to identify, by number, which of Defendants' undisputed facts they contend were in dispute, Plaintiffs' response failed to cite any admissible evidence in support of their conclusory legal summations.
 
 
 11
 4 Appellants' App. at 1400. A footnote to this passage describing the "29 'Disputed/Undisputed Material Facts' " stated that
 
 
 12
 six reference the unattached declarations of the plaintiffs; seven contain no citations to the record; five concern irrelevant "background" information; and one refers to inadmissible double hearsay. The majority of the remaining paragraphs either lack support from the referenced material in the record, are irrelevant to the alleged conduct of the defendants, or even if proved, would not support the plaintiffs' claims.
 
 
 13
 Id. n. 3.
 
 
 14
 On appeal, plaintiffs contend that they produced admissible evidence specifically identifying triable issues of material fact that should have precluded summary judgment on their due process and liberty interest claims.[3] They also contend that they fully complied with Fed.R.Civ.P. 56(e) and substantially complied with Local Rule 56.1(b) such that total rejection of their factual opposition to summary judgment was unwarranted.
 
 
 15
 We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). Universal Money Ctrs., Inc. v. AT & T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Universal, 22 F.3d at 1529 (quoting Fed.R.Civ.P. 56(c)). While the movant bears the burden of showing the absence of a genuine issue of material fact, Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 569-70 (10th Cir.1994), the movant need not negate the nonmovant's claim, but need only point to an absence of evidence to support the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Universal, 22 F.3d at 1529. If the movant carries this initial burden, the nonmovant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Applied Genetics, 912 F.2d at 1241.
 
 B. Local Rule 56.1(b)
 
 16
 The district court specifically held that defendants met their initial burden of showing the absence of disputed material facts:
 
 
 17
 In the memoranda submitted in support of each of their motions for summary judgment, Defendants properly directed this court's attention to each and every element of Plaintiffs' causes of action where no genuine issue of material fact exists. For each motion, Defendants supplied a numbered set of specifically-tailored "Undisputed Material Facts," supported by affidavits and other admissible evidence. In addition, Defendants pointed out Plaintiffs' complete lack of admissible evidence to support one or all of the elements of each of their claims.
 
 
 18
 ....
 
 
 19
 ... [T]he Court must accept Defendants' undisputed evidence, which in each instance establishes that Defendants' conduct did not violate any of Plaintiffs' state or federal rights.
 
 
 20
 4 Appellants' App. at 1399, 1400 (emphasis in original). Plaintiffs do not challenge this determination on appeal, and we therefore will not review it. See, e.g., Dixon v. City of Lawton, 898 F.2d 1443, 1449 n. 7 (10th Cir.1990) (issue deemed abandoned if not argued on appeal); Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir.1990). We consider only plaintiffs' argument that they properly raised disputed issues of material fact precluding summary judgment.
 
 
 21
 District courts have discretion to adopt local rules that are necessary to carry out the conduct of their business that are not inconsistent with the Federal Rules of Civil Procedure. See Frazier v. Heebe, 482 U.S. 641, 645 (1987); 28 U.S.C.2071; Fed.R.Civ.P. 83. "Local rules are primarily housekeeping rules; their purpose is to facilitate operation of the court." Hernandez v. George, 793 F.2d 264, 266 (10th Cir.1986). Consistent with Fed.R.Civ.P. 56, Local Rule 56.1(b) facilitates the district court's review of summary judgment motions by requiring nonmovants to specifically identify and properly support what nonmovants claim are material disputed facts and point out the movants' alleged facts that they dispute; otherwise, the movants' facts will be deemed admitted. Plaintiffs do not contest, apparently for good reason, the validity of Local Rule 56.1(b). See, e.g., Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to Local Rule 56.1(b)).
 
 
 22
 Plaintiffs concede that they failed to strictly follow "by the letter" the requirements of Local Rule 56.1(b). Appellants' Br. at 17. However, they claim that they "substantially complied" with the rule and that the district court's rejection of their evidence in opposition to the summary judgment motions was unwarranted. We view plaintiffs' summary judgment responses more as defying Local Rule 56.1(b) rather than substantially complying with it, particularly after the court specifically ordered them to follow it.
 
 
 23
 Plaintiffs' responses to the summary judgment motions on due process and liberty interest claims did not contain a concise statement of their asserted material disputed facts. The items on plaintiffs standard list of "Disputed/Undisputed Material Facts" generally were either irrelevant or unsupported by admissible evidence. Further, plaintiffs failed to specifically controvert any of defendants' claimed undisputed material facts, which the court found were properly supported by admissible evidence. Reviewing the court's application of its local rules for abuse of discretion, Hernandez, 793 F.2d at 268, we cannot say that the court abused its discretion by relying on Local Rule 56.1(b) and concluding that plaintiffs failed to identify any disputed material facts precluding summary judgment.
 
 
 24
 C. The merits of plaintiffs' due process and liberty interest claims
 
 
 25
 Furthermore, even looking beyond plaintiffs' noncompliance with the local rule, we find their arguments on appeal unpersuasive. While plaintiffs contend that "all material facts submitted by defendants are either disputed or, construed liberally in plaintiffs [sic] favor, preclude summary judgment," Appellants' Br. at 5, for the most part, plaintiffs fail to point out what these disputed facts that support their position are. They refer to "overwhelming evidence" that defendants coerced them out of town and thus deprived of the process they were due, but refer only generally to over 500 pages of the record to support their contention. We will not search through these pages to determine what facts contradict defendants' submissions and to make plaintiffs' arguments for them. See Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1025 (10th Cir.), cert. denied, 113 S.Ct. 635 (1992).
 
 
 26
 Following this general reference to "overwhelming evidence," plaintiffs then point to one example to support their position. This one example is a citation to an affidavit prepared by Dr. Vance Smith. However, plaintiffs did not argue to the district court that this affidavit created any disputed issues of fact relevant to their claim that defendants coerced plaintiffs to forego their due process rights.[4] We do not consider arguments on appeal that were not presented to the district court, Walker v. Mathers (In re Walker), 959 F.2d 894, 896 (10th Cir.1992), nor do we expect a district court to comb through a large, raw record to search for possible disputed facts.[5]
 
 
 27
 In sum, plaintiffs have not shown that the district court erred in granting summary judgment to defendants on their due process and liberty interest claims.
 
 
 28
 D. Dismissal of the equal protection claim of plaintiffs
 
 
 29
 On defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the district judge rejected the claim of both Dr. Vance Smith and Deborah Smith under the Equal Protection Clause. The judge's order said he had thoroughly considered the submissions of the parties and the law and that "Defendants' motion is well taken--in that Plaintiffs fail to allege membership in a constitutionally-protected group--and will be granted." 4 Appellants' App. at 1391. No other analysis of the equal protection claim was made.
 
 
 30
 We review de novo a dismissal for failure to state a claim. Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir.1995). Moreover, we are instructed that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); see American Home Assurance Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir.1977).
 
 
 31
 The Second Amended Complaint requires careful analysis under equal protection precedents. Its most pertinent averments follow:
 
 
 32
 19. On or about August 1984, plaintiff, DR. SMITH, received general surgical and vascular privileges at defendant ENMMC and St. Mary's Hospital. At the time, DR. SMITH was one of approximately 500 residence-trained, board-certified vascular surgeons in the country, and the only such surgeon in New Mexico.
 
 
 33
 ....
 
 
 34
 31. Defendant TRELOAR further stated at the aforesaid meeting:
 
 
 35
 I think, one of the things we all need to understand is that if we take any action at all that is going to suspend his privileges, in essence, I think, we are taking his livelihood away from him, and I don't think he can go some place else and practice. I think that we have already got him because he has been suspended once, and if we proceed and go that direction again, I think, pretty much we have taken him down.
 
 
 36
 ....
 
 
 37
 33. In addition, there were also discussions at this meeting regarding (A) other doctors operating at the hospital with alcohol on their breath, (B) other doctors abandoning patients because of personal disputes, (C) other doctors falsifying treatment records, and (D) other doctors yelling at nurses and throwing "temper tantrums", with the recognition that no actions had been taken by defendant ENMMC or St. Mary's Hospital as a result of such conduct.
 
 
 38
 34. .... The main focus of defendants, at all times relevant herein, was to force plaintiffs to abandon their medical practices in Roswell, and at defendant ENMMC and St. Mary's Hospital, in any way possible, regardless of legality. "Peer review" was nothing more than the illegitimate process by which defendants would accomplish this goal. ...
 
 
 39
 ....
 
 
 40
 36. .... In addition, on multiple occasions, plaintiff DR. SMITH was harassed and forced to provide justification for requested privileges in situations where other doctors would not be so requested. ...
 
 
 41
 ....
 
 
 42
 46. Between August 1984, and July 1991, defendants, and each of them, treated plaintiff DR. SMITH in a disparately different fashion than other medical and surgical practitioners at defendant Hospital ENMMC, during defendants' review, andor support of plaintiff DR. SMITH'S medical and surgical practice and in the "disciplinary" measures taken against plaintiff DR. SMITH in an attempt to force plaintiff DR. SMITH to limit andor abandon his medical and surgical practice in defendant hospital ENMMC, and in Roswell, New Mexico, andor designed to limit andor terminate plaintiff DEBORAH SMITH'S operation of the vascular laboratory. This improper use of the "peer review" process was a part of the ongoing conspiracy by defendants to run plaintiff out of town.
 
 
 43
 ....
 
 
 44
 91. Defendants, and each of them, engaged in actions to wrongfully, arbitrarily, capriciously, without due process, and without affording plaintiffs equal protection under the law, in violation of the plaintiffs' state and federal civil rights (42 U.S.C.1983), coerce plaintiff DR. SMITH into resigning his privileges at defendant hospital ENMMC, and terminate plaintiff DEBORAH SMITH'S Vascular Laboratory, in an attempt to deprive them of their right and liberty to practice medicine and treat patients at defendant hospital ENMMC and in Roswell, New Mexico.
 
 
 45
 ....
 
 
 46
 93. In doing all and each of the things herein complained of, the defendants ... acted arbitrarily and capriciously, without affording plaintiffs due process or equal protection of law in violation of plaintiffs' civil rights and liberty interests.
 
 
 47
 ....
 
 
 48
 96. The individual defendants who recommended the initial restriction of plaintiff DR. SMITH's privileges and the subsequent denial of their extension and/or who coerced plaintiff DR. SMITH into resigning, and/or terminated plaintiff DEBORAH P. SMITH's Vascular Laboratory were guilty of fraud, malice and oppression and were motivated by a desire to promote their own improper economic interests and with a wanton disregard of the rights of plaintiffs or the interests of their patients.
 
 
 49
 1 Appellants' App. at 17-18, 22-24, 28-29, 40-42 (emphasis added).
 
 
 50
 "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." Buckley Constr., Inc. v. Shawnee Civic & Cultural Development Auth., 933 F.2d 853, 859 (10th Cir.1991) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). As City of Cleburne notes, id. at 440, the general rule is that legislation is presumed to be valid if a classification drawn by it is rationally related to a legitimate state interest. "The general rule gives way, however, when a statute classifies by race, alienage, or national origin.... [T]hese laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." Id. The more familiar equal protection claims assert some invalid classification within which the plaintiff falls, and an equal protection claim may sometimes fail where a plaintiff "does not allege a classification sufficient to invoke the equal protection clause." E.g., Buckley Construction, 933 F.2d at 859. Here that type of an equal protection infringement victimizing an identified class does not appear to be alleged because plaintiffs do not charge that defendants acted adversely to them because they were members of a particular identified group. The complaint does say that Dr. Smith "was one of approximately 500 residency trained, board-certified vascular surgeons in the country," 1 Appellants' App. at 18, but the complaint goes no further to aver that any of the allegedly disparate actions of the defendants were taken because of Dr. Smith's membership in that class or that any actions by defendants complained of were directed against that group.
 
 
 51
 However, that does not end our analysis. As our Buckley Construction opinion itself recognized, the Equal Protection Clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the plaintiff alleges "an element of intentional or purposeful discrimination" so as to invoke the clause to protect an individual victim. Buckley Construction, 933 F.2d at 859, quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944). Buckley Construction, 933 F.2d at 859, in holding the claim defective there, noted specifically that there was no allegation of such intentional or purposeful discrimination in application of the bidding procedure.
 
 
 52
 In Esmail v. Macrane, 53 F.3d 176, 178-180 (7th Cir.1995), the plaintiff alleged that a powerful public official violated the Equal Protection Clause by refusing to renew the plaintiff's liquor license out of sheer vindictiveness. Citing City of Cleburne, 473 U.S. at 446-47, the Seventh Circuit held that the individual plaintiff's complaint stated a claim by averring the vindictive action against him. Important for our analysis, in Esmail Chief Judge Posner stated: "But neither in terms nor in interpretation is the clause limited to protecting members of identifiable groups." Esmail, 53 F.3d at 180 (emphasis added). The Seventh Circuit held that an equal protection claim was stated, reasoning that: "What [the Equal Protection Clause] does require, and what Esmail may or may not be able to prove, is that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." Id. See also Ciechon v. City of Chicago, 686 F.2d 511, 522-24 & n. 16 (7th Cir.1982) (intentional act of invidious discrimination with no rational basis and motivated by bad faith established equal protection claim asserted by single victim, without identification of a class of victims); Zeigler v. Jackson, 638 F.2d 776, 779-80 (5th Cir. Unit B Mar. 1981) (distinctions between similarly situated individuals must be reasonable and not arbitrary in order to survive equal protection challenge). In none of these Seventh or Fifth Circuit cases was any classification or group identified as the target of the intentionally disparate treatment. Thus our Sister Circuits have held that showing "an element of intentional or purposeful discrimination" against one victim, Buckley Construction, 933 F.2d at 859, may establish an equal protection violation although a target group or classification is not identified.
 
 
 53
 Other circuits have expressed similar views. We find particularly persuasive the analysis in Burt v. City of New York, 156 F.2d 791 (2d Cir.1946). There Judge Learned Hand analyzed Snowden and concluded that under that decision the plaintiff's allegations of "purposeful discrimination," "that defendants' treatment of plaintiff was actuated by personal hostility," and that defendants "singled [plaintiff] out for unlawful oppression" in denying his application for work as an architect, were sufficient to state an equal protection claim. Dismissal of plaintiff's civil rights complaint was reversed. 156 F.2d at 791-93.[6]
 
 
 54
 Thus, in addition to shielding victims from discriminatory treatment of them as members of an identified class, the Equal Protection Clause affords protection to an individual injured by "intentional or purposeful discrimination," Snowden, 321 U.S. at 8, without identification of a class. Giving the complaint before us the favorable consideration required by Conley v. Gibson and our own precedents, we cannot uphold the dismissal on motion of the plaintiffs' equal protection claim here. As noted, among other things it is averred that Dr. Smith was disparately treated in the review of his actions; the disciplinary measures were taken against him to force the abandonment of his practice and his departure; improper use of the peer review process was part of the ongoing conspiracy to force Dr. Smith's departure; the actions of defendants against both plaintiffs constituted "fraud, malice and oppression and were motivated by a desire to promote their own improper economic interests" (p 96); and the actions to coerce Dr. Smith's resignation and Mrs. Smith's termination of her laboratory service were taken "without affording plaintiffs equal protection rights." As said in Esmail, the plaintiffs may or may not be able to prove such a case, but we, like the court there, are persuaded that the complaint states an equal protection claim which should not have been dismissed on the motion.
 
 E. District court sanctions
 
 55
 The district court determined that plaintiffs inadequately and in bad faith responded to defendants' requests for admissions and corresponding interrogatories and document requests. It therefore granted defendants' motion for sanctions and ordered that 110 of the requests be deemed admitted and that plaintiffs pay defendants' attorney fees incurred in connection with their motion for sanctions. Plaintiffs contend that the preclusive sanctions were unduly harsh and that the court abused its discretion in ordering them.
 
 
 56
 The discovery requests at issue related to plaintiffs' claims for tortious interference with business relations and defamation, counts V to X of the Second Amended Complaint. The requests for admission generally asked plaintiffs to admit or deny that they had certain documents supporting these claims.[7] If plaintiffs did not admit a request, interrogatories asked them for the identity of witnesses and documents to support their response, and reasons why they could not admit the request and each fact supporting their response. A corresponding document request asked plaintiffs to produce, or specifically identify documents previously produced, any documents to which plaintiffs referred in their answers. In their interrogatory answers for denials, plaintiffs usually referred only generally to documents supporting their denial.[8] In finding plaintiffs' responses inadequate, the district court stated:
 
 
 57
 In most, if not all, of the denials made to requests for admissions, Plaintiffs have not substantiated their denials by pointing to specific references in documents. References to entire depositions or entire tapes are not sufficient, and this the more the case in those instances where the material cited bears no apparent relation to the inquiry being pursued in the discovery.
 
 
 58
 4 Appellants' App. at 1342-43. The court also found that plaintiffs' objections to the authenticity of the discovery requests and responses--which the court found necessitated a hearing to address--were essentially frivolous. Id. at 1341, 1342. The court did not accept plaintiffs' excuse that they did not have enough time to prepare their responses, concluding that plaintiffs had adequate time and that preparation of appropriate responses would have been consistent with trial preparation. Id. at 1342.
 
 
 59
 Plaintiffs contend that the preclusive sanction--deeming the requests admitted--was too harsh because it effectively dismissed their tortious business interference and defamation claims. They argue that the sanction should have been imposed on their attorneys because they were the ones actually at fault and that the court abused its discretion by not considering less drastic sanctions, such as a larger monetary award against plaintiffs or their attorneys. They also complain that the sanction was unfair because the court did not issue its sanction order until after they filed their summary judgment responses. That allowed defendants to use the admissions in their reply briefs. Plaintiffs also contend that the district court considered the evidence preclusion sanction in granting the summary judgment motions.
 
 
 60
 What plaintiffs fail to show, however, is how the evidence preclusion sanction affected their ability to defend against summary judgment. Though defendants requested that the sanction include dismissal of the six tortious interference and defamation claims, the court denied this request. Plaintiffs' contention that the sanction effectively dismissed these claims is only their view of the situation. The court actually granted summary judgment on these claims on the same basis it granted summary judgment on the other claims--plaintiffs' complete failure to identify any material factual disputes.[9] Plaintiffs have not attempted to show how or why, even if we reversed the district court's ruling, summary judgment would be inappropriate. To show reversible error from improper exclusion of evidence, a party must show how it was prejudiced by that exclusion. See Ford v. Alfaro, 785 F.2d 835, 840 (9th Cir.1986) (finding improper evidence preclusion sanction harmless where sanctioned party did not show prejudice from inability to present evidence); see also K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155-56 (10th Cir.1985) ("[E]rror in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with party asserting error."). Plaintiffs have failed to make that showing. We therefore need not consider whether the evidence preclusion sanction was proper because any error would be harmless.
 
 
 61
 We turn now to the monetary sanction. We review a district court's sanction order for abuse of discretion. Willner v. University of Kan., 848 F.2d 1020, 1030 (10th Cir.1988), cert. denied, 488 U.S. 1011 (1989). Plaintiffs do not challenge the amount of the sanction; they argue only that the district court's order of a monetary sanction on top of the evidence preclusion sanction was unfair in the context of this case. They argue that their responses substantially complied with defendants' discovery requests and that the court was wrong in faulting them for failing to substantiate their denials by pointing to specific references in documents. We cannot say that this interpretation of what defendants' requests required was unreasonable. Though plaintiffs contend that defendants should have been sanctioned for a more egregious discovery violation, that issue is irrelevant to the sanction order against plaintiffs.
 
 
 62
 Plaintiffs also argue that their responses were not made in bad faith because they did not have enough time to prepare the responses. The discovery requests were served in December 1993, and plaintiffs moved for a protective order. The court denied the motion on March 15, 1994 (plaintiffs' counsel did not receive the order until March 21), and plaintiffs' responses were due on March 29. Again, we cannot say that the court abused its discretion in concluding that this short time frame for responding excused plaintiffs' failure to adequately respond. Finally, the court essentially found frivolous the plaintiffs' assertion that the documents supporting defendants' motion for sanctions (the discovery requests and responses themselves) were inauthentic and inadmissible. Plaintiffs do not even challenge this finding. We see no abuse of discretion in the order of monetary sanctions.
 
 F. Sanctions on appeal
 
 63
 Finally, defendants contend that plaintiffs' appeal was frivolous and that they should be awarded their attorney fees on appeal as a sanction pursuant to Fed. R.App. P. 38 and 29 U.S.C.1927. Though some of plaintiffs' arguments on appeal were weak at best, we do not believe the appeal warrants sanctions. White v. General Motors Corp., 908 F.2d 669, 674-75 (10th Cir.1990), cert. denied, 498 U.S. 1069 (1991).
 
 III.
 
 64
 The district court erred in dismissing plaintiffs' equal protection claim under Rule 12(b)(6); that ruling is REVERSED and that claim is REMANDED for further proceedings. The district court properly granted summary judgment for defendants on plaintiffs' other claims. We find no error in the order for evidence preclusion and monetary sanctions. Accordingly, the judgment is AFFIRMED in part and REVERSED in part and the case is REMANDED for further proceedings on the equal protection claim.
 
 
 65
 ANDERSON, Judge, concurring in part and dissenting in part:
 
 
 66
 While I concur in most of the majority opinion, I respectfully dissent from that portion of the opinion reversing the dismissal of plaintiffs' equal protection claim and remanding it for further proceedings. I would affirm the district court's dismissal of that claim under Fed.R.Civ.P. 12(b)(6).
 
 
 67
 The cases upon which the majority relies recognize a very narrow category of equal protection claims, involving "an orchestrated campaign of official harassment directed against [a plaintiff] out of sheer malice." Esmail v. Macrane, 53 F.3d 176, 179 (7th Cir.1995); see also Rubinovitz v. Rogato, 60 F.3d 906, 912 (1st Cir.1995) (finding that evidence of "a malicious orchestrated campaign causing substantial harm" is barely sufficient to survive summary judgment); LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir.1980) (equal protection claim may succeed if plaintiff proves selective treatment "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person"), cert. denied, 450 U.S. 959 (1981).
 
 
 68
 Even were we to decide to recognize in this circuit the extension of equal protection analysis to include such cases, this is not such a case. Plaintiffs do not allege the kind of orchestrated and wholly arbitrary malicious and injurious attack on them which they would need to allege to fall within the parameters of Esmail. I therefore dissent from that portion of the opinion holding that plaintiffs' have stated an equal protection claim.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Because the sanctions order challenged in No. 94-2213 was an unappealable interlocutory order when plaintiffs filed their notice of appeal, that appeal initially was premature and we lacked jurisdiction to hear it. However, that appeal subsequently ripened when the district court entered its final order granting summary judgment and dismissing the case. See Dodd Ins. Servs., Inc. v. Royal Ins. Co., 935 F.2d 1152, 1154 n. 1 (10th Cir.1991)
 
 
 [3]
 Plaintiffs do not contest the district court's grant of summary judgment on their other claims
 
 
 [4]
 Plaintiffs referred to this affidavit in their summary judgment responses only for general, uncontroverted background facts and for allegations regarding an allegedly unqualified anesthesiologist, the relevance of which is not apparent. See Plaintiffs' memorandum in opposition to motion for summary judgment on claims re: due process and liberty interests, 2 Appellants' App. at 442-44, paragraphs 1, 5, 7, 9, 10, 11
 
 
 [5]
 Plaintiffs admit that Dr. Vance Smith's affidavit was "tardily filed, on or about June 29, 1994," which was the day it was prepared and signed and was more than three weeks after plaintiffs filed their summary judgment responses. Appellants' Br. at 16; 3 Appellants App. at 917. The court noted that the responses referred to Vance and Deborah Smith's affidavits, but that the affidavits were not attached to the responses. (Deborah Smith's affidavit apparently was never filed.) In any event, most of the affidavit is inadmissible under Fed.R.Civ.P. 56(e) because it is not based on Smith's personal knowledge. Indeed, it reads more like--and in large part, is identical to--one of plaintiffs' briefs
 
 
 [6]
 See also Rubinovitz v. Rogato, 60 F.3d 906, 910-11 (1st Cir.1995) ("in the absence of invidious discrimination or the abuse of a fundamental right, a party may establish an equal protection violation with evidence of bad faith or malicious intent to injure." (Emphasis added.)); LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir.1980) (selective enforcement of law may violate equal protection if based on "malicious or bad faith intent to injure a person"), cert. denied, 450 U.S. 959 (1981); Shock v. Tester, 405 F.2d 852, 855-56 (8th Cir.) (plaintiff's equal protection claim failed because he did not allege that acts of defendant officers were ones of intentional or purposeful discrimination.), cert. denied, 394 U.S. 1020 (1969). Cf. Cook v. City of Price, Carbon County, Utah, 566 F.2d 699, 701 (10th Cir.1977) (to show equal protection infringement when the discrimination is not aimed at a suspect class, "a plaintiff must show intentional or purposeful discrimination.") (citing Snowden, 321 U.S. at 8)
 
 
 [7]
 For example, Request No. 80 asked plaintiffs to admit that "[y]ou have no documents evidencing that between 1984 and 1991, inclusive, Dr. Mooney damaged your reputation." 1 Appellants' App. at 124. Request No. 83 asked plaintiffs to admit that "[y]ou have no documents evidencing that between 1984 and 1991, inclusive, Dr. Stangebye interfered with your ability to do vascular studies." Id
 
 
 [8]
 For example, plaintiffs' answer relevant to Request No. 80 stated: "Executive Committee Meeting minutes 1989-1991; ENMMC's file re: Dr. Smith; Dr. Smith's file regarding American College of Surgeons records; deposition of Jerry Gant; allegations of Medicare and Medicaid fraud against the Vascular Lab; document produced at Rob Wallace deposition." 1 Appellants' App. at 138. Their answer related to Request No. 83 stated Tape transcript of discussion with Dr. Stangebye at Stangebye's office; minutes of Executive Committee Meeting June 1991; August 1988, Joint Credentialing Committee Minutes; Deposition of Dr. Stangebye; 'Big File.' " Id
 
 
 [9]
 In its order granting summary judgment, the court did note plaintiffs' contention in opposition to the sanction that it would effectively dismiss the six claims. 4 Appellants' App. at 1396 n. 1. The court then stated that "by the plaintiffs' own admission, Counts V through X of the Plaintiffs' Second Amended Complaint have already been effectively dismissed." Id. We do not, however, view this statement as the district court's dismissal of these counts based on the preclusive sanction. The court's discussion of plaintiffs' defective summary judgment responses and defendants' entitlement to summary judgment applied to all counts. Id. at 1399-1401